COBB, Justice,
for the Court:
¶ 1. J.H.C. and J.R.D., Jr. are the divorced natural parents of a seven-year-old child. J.H.C. and S.N.C., the child’s stepfather, filed a petition seeking to terminate the parental rights of J.R.D., Jr., alleging that he had abandoned the child and that he was unfit to rear the child. They also asked the court to approve the adoption of the child by S.N.C. After a hearing on the issue of the termination of parental rights, the chancellor denied the petition and refused to terminate J.R.D., Jr.’s parental rights. J.H.C. and S.N.C. appealed from that decision of the Franklin County Chancery Court, and the Court of Appeals affirmed the chancellor. S.N.C. v. J.R.D., No. 97-CA-01131-COA (Miss.Ct.App. Feb.9,1999). This Court granted certiora-ri because this case involves a fundamental issue of broad public importance. We also affirm.
FACTUAL BACKGROUND
¶ 2. A child was born to the marriage of J.H.C. and J.R.D., Jr. and less than a year thereafter, the parties divorced on May 6, 1992. Before the divorce, J.R.D., Jr. moved to Midland, Texas to live with his parents. The parties reached a settlement agreement and an agreed order was entered by the Franklin County Chancery Court. It did not require J.R.D., Jr. to pay child support and did not provide for specific visitation.
¶ 3. J.R.D., Jr. made several visits to see the minor child from the date of the divorce until the date of trial. Specifically, J.R.D., Jr. visited with the minor child during the summer of 1992, summer of 1993, Christmas of 1993, and summer 1994. The parties dispute whether J.R.D., Jr. visited with the child around Thanksgiving of 1994. In addition, a visit was scheduled for Memorial Day of 1995, but was canceled by J.H.C., who claimed that she and the child would be out of town. This visit was never rescheduled. J.R.D., Jr. admitted that he did not pay child support due to the aforementioned order, but he stated that he or his mother repeatedly asked J.H.C. if the minor child needed anything.
¶ 4. J.H.C. remarried in April 1994. On October 11, 1995, J.H.C. and S.N.C., her new husband, filed a petition to terminate J.R.D., Jr.’s parental rights and for S.N.C. to adopt the minor child. The petition claimed that J.R.D., Jr. had abandoned the child for over a year and was mentally, morally or otherwise unfit to be a parent.
¶ 5. James A. Torrey was appointed guardian ad litem, assigned to represent the interests of the minor child. At trial, he stated his concerns about the lack of contact by J.R.D., Jr. with the minor child. The guardian ad litem concluded that J.R.D., Jr. had abandoned his legal and civil responsibilities, and he recommended termination of J.R.D. Jr.’s parental rights and that the adoption be allowed.
¶ 6. In his bench opinion, the chancellor stated:
It’s undisputed that [J.R.D., Jr.] paid no support based upon the letter and the agreement that was entered by the court. He had little contact, only five or six visits over the period of time prior to the filing of this suit and basically no telephone calls except through his mother. His testimony is that he requested her on occasion to call, and he did not call because he and his former wife didn’t get along and argued and fussed when they did call.
Now, the plaintiffs argue that in spite of the letter concerning the child support and in spite of the agreed order, that [J.R.D., Jr.] was obligated to pay child support. That all parents are obligated, and I agree with that part. However, it’s the court’s opinion that this obligation was assumed by [J.H.C.] in this proceeding and [J.R.D., Jr.] had every right to rely on that assumption until he was notified otherwise. The testimony reflects that he was never advised that support was expected or needed.... But whatever was requested was provided. *1080 Now, plaintiffs further argue that [J.R.D., Jr.] had abandoned [the minor child] for more than one year from May of 1994 to October of 1995 when the suit was filed. During this period of time frequent calls were made, scheduled visitation which had been arranged for May of 1995 was canceled by [J.H.C.] and the result was that there was no visitation although it was not the responsibility or altogether the responsibility of [J.R.D., Jr.]....
However, based on the record this court is of the opinion that the plaintiffs have failed to prove by clear and convincing evidence of abandonment or unfitness, either mentally or morally and it follows from that the best interest that [the minor child] would be served by dismissing the petition....

ANALYSIS

¶ 7. The standard of review on appeal of parental rights termination by abandonment matters is limited. “The chancellor’s findings of fact are viewed under the manifest error/substantial credible evidence test.” Vance v. Lincoln County Dep’t of Pub. Welfare, 582 So.2d 414, 417 (Miss.1991) (citing Bryant v. Cameron, 473 So.2d 174, 179 (Miss.1985); Veselits v. Cruthirds, 548 So.2d 1312, 1316 (Miss.1989)). Additionally, the Court on appeal “ask[s] not how we would have decided the case ab initio but whether there be credible proof from which a rational trier of fact may have found abandonment by clear and convincing evidence.” Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992). However, “where on review it is apparent the court below has misapprehended the controlling rules of law or has acted pursuant to a substantially erroneous view of the law, we will proceed de novo and promptly reverse.” Id.
¶ 8. The chancellor appointed James A. Torrey to be guardian ad litem for the minor child in the parental rights termination proceedings. Torrey investigated the matter, interviewed the parties, and submitted his report to the court. He testified at trial and examined witnesses. He gave his opinion that J.R.D., Jr. had abandoned the child. Torrey also recommended that S.N.C. be allowed to adopt the child.
¶ 9. In his bench opinion the chancellor stated that he had “given careful consideration to the recommendations of the guardian ad litem.” However, he found that the record did not support the guardian ad litem’s recommendation. He found that the petitioners’ claim that J.R.D., Jr. had abandoned the child from May of 1994 until October of 1995 was not supported by the evidence. The chancellor determined that J.R.D., Jr.’s mother had made frequent phone calls at least partly on behalf of J.R.D., Jr. The chancellor also found that J.H.C. had canceled a planned visit by J.R.D., Jr. in May of 1995 by telling J.R.D., Jr. that she and the child would be out of town and unavailable for visitation. Although the chancellor did not address the evidence in more detail in his bench opinion, there was extensive testimony that J.R.D., Jr. had visited the child around Thanksgiving of 1994, which also would have tolled the one-year abandonment time period. There was also testimony that J.R.D., Jr. had sent cards and gifts to the child on occasion or that his mother had sent the presents on his behalf.
¶ 10. In order to terminate the parental rights of J.R.D., Jr. and enable the adoption by S.N.C., the petitioners were required to prove that he had abandoned the child without contact for over one year or that he was mentally, morally, or otherwise unfit to rear the child. Miss.Code Ann. § 93-17-7 & § 93-15-103 (1994 & Supp.1999). The chancellor and the Court of Appeals found that there was no evidence introduced that J.R.D., Jr. was mentally, morally, or otherwise unfit to raise the child. The only evidence offered to show that he was unfit was an allegedly abusive incident between J.R.D., Jr. and J.H.C. in 1992. The chancellor and the *1081 Court of Appeals correctly found that this was not a “series of abusive incidents concerning one or more child” under Miss. Code Ann. § 93-15-103. The guardian ad litem’s recommendation did not examine J.R.D., Jr.’s fitness to be a parent, and the petitioners do not raise the issue in their petition for certiorari. The substantive question before the Court, therefore, is whether J.R.D., Jr’s conduct with regard to his child amounted to abandonment.
¶ 11. Abandonment is defined as “any conduct by a parent which evinces a settled purpose to forego all duties and relinquish all parental claims to the child.” Natural Mother v. Paternal Aunt, 583 So.2d 614, 618 (Miss.1991). “The test is an objective one: whether under the totality of the circumstances ... the natural parent has manifested [his] severance of all ties with the child.” Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992). The party seeking to terminate a natural parent’s rights must prove his case by clear and convincing evidence. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), Miss.Code Ann. § 93-15-109 (Supp.1999).
 ¶ 12. The chancellor found that the petitioners had not proved by clear and convincing ’evidence that J.R.D., Jr. had abandoned the child. The bench opinion stated that J.R.D., Jr. “should have done more” for his child and that he was not an ideal parent. But the trial court did not find that he had abandoned the child without contact for one year. The chancellor’s opinion is supported by credible evidence in the record. The parties agree that J.R.D., Jr. visited his son in the summer of 1994. The parties also agree that J.R.D., Jr. had made plans to drive from Midland, Texas, to visit his son in Franklin County on Memorial Day weekend in May of 1995, but that the visit did not occur because J.H.C. canceled it. J.R.D., Jr. and several of his witnesses also testified that he had visited with the child around Thanksgiving of 1994. J.H.C. claimed that he was not in Mississippi when she took the child to J.R.D., Jr.’s grandmother’s house that Thanksgiving. Additionally, there was testimony from both sides about fairly frequent telephone conversations between J.H.C. and J.R.D., Jr.’s mother. J.R.D., Jr. claimed that he asked his mother to call because he and J.H.C. could not talk without arguing. J.R.D., Jr. also testified about gifts and cards he sent to the child on birthdays and other occasions. The petitioners also claimed at trial that J.R.D. Jr’s failure to pay child support constitutes abandonment. Although J.R.D., Jr. conceded that he did not pay child support, he notes that the judgment of divorce did not specify any child support and did not require him to pay child support. Failure to pay child support alone does not constitute abandonment. Carter v. Taylor, 611 So.2d 874, 877 (Miss.1993).
¶ 13. On the evidence presented at trial, the chancellor correctly found that the petitioners did not prove that J.R.D., Jr. had abandoned the child without contact for a year. Even though J.R.D. Jr’s contacts with the child were minimal, the evidence shows that J.R.D., Jr. did maintain ties to the child and did not relinquish all parental claims to the child. The chancellor’s determination that J.R.D., Jr. had not abandoned his child was correct.
¶ 14. In their petition for certiorari, J.H.C. and S.N.C. claim that the chancellor did not properly consider the recommendations of the guardian ad litem. They propose that this Court establish a standard with regard to the recommendations of a guardian ad litem in parental termination cases. They suggest that the guardian ad litem’s recommendation “should be given great weight” and that the trial court should be “obligated to give deference to the guardian ad litem’s recommendation.” The guardian ad litem in this case recommended that J.R.D. Jr.’s parental rights be terminated and that the adoption of the child by S.N.C. be allowed.
*1082 ¶ 15. Miss.Code Ann. § 93-15-107 provides in part that “[a] guardian ad litem shall be appointed to protect the interest of the child in the termination of parental rights.” This Court has held that the appointment of a guardian ad litem in parental rights termination cases is mandatory. E.M.C. v. S.V.M., 695 So.2d 576 (Miss.1997); Luttrell v. Kneisly, 427 So.2d 1384 (Miss.1983).
¶ 16. In In re D.K.L., 652 So.2d 184 (Miss.1995), the decision of the chancery court in a neglected child case was reversed and remanded because the guardian ad litem did not fully represent the child’s interests. The guardian in that case made no recommendation and did not zealously represent the child. In In re R.D., 658 So.2d 1378 (Miss.1995), this Court adopted the reasoning of the South Carolina Court of Appeals in its decision in Shainwald v. Shainwald, 302 S.C. 453, 395 S.E.2d 441, 444 (Ct.App.1990) with regard to the minimum requirements for the appointment of a guardian ad litem. A guardian ad litem must be competent, without interests adverse to the child, and he must be adequately informed as to his duties. 658 So.2d at 1383. We also stated therein the proper function or role of a guardian ad litem as one who “investigates, makes recommendations to a court, or enters reports” and is “a representative of the court appointed to assist it in properly protecting the interests of an incompetent person.” Id. at 1383 (citing Short ex rel. Oosterhous v. Short, 730 F.Supp. 1037 (D.Colo.1990)).
¶ 17. We affirm those prior holdings. Although this Court has required a guardian ad litem to perform tasks competently, there is no requirement that the chancellor defer to the findings of the guardian ad litem, as is proposed by the petitioners. Such a rule would intrude on the authority of the chancellor to make findings of fact and to apply the law to those facts.
¶ 18. We do hold, however, that a chancellor shall include at least a summary review of the qualifications and recommendations of the guardian ad litem in the court’s findings of fact and conclusions of law. Further, we hold that when a chancellor’s ruling is contrary to the recommendation of a statutorily required guardian ad litem, the reasons for not adopting the guardian ad litem’s recommendation shall be stated by the court in the findings of fact and conclusions of law.
¶ 19. As noted above, the guardian ad litem in this case participated in the trial. He examined witnesses and presented his recommendation. The chancellor not only commended the guardian’s performance but also stated that he (the chancellor) had “given careful consideration to the recommendations of the guardian ad li-tem”. Nevertheless, the chancellor found that the guardian ad litem’s recommendation that the court find that J.R.D., Jr. had abandoned the child was not supported by the record. The chancellor had that authority, and under our limited standard of review, we affirm. The fact that the chancellor did not itemize the guardian ad li-tem’s reasons for his recommendations, and that the chancellor did not list his reasons for not following the guardian’s recommendations is not applicable in the present case, as our ruling establishing these requirements is prospective only.
CONCLUSION
¶ 20. The grave decision to terminate a parent’s fundamental right to be involved in the life of his or her child is among the more difficult decisions a chancellor faces. Because that decision is so important, the Legislature has seen fit to require the input of a guardian ad litem who is required to protect the child’s best interests. The guardian ad litem’s presence, however, in no way detracts from the chancellor’s duty to hear the evidence and make a decision on all of the evidence, not just on the testimony of the guardian ad litem. Even though we hold that the *1083 chancellor’s differences with the recommendation of the guardian ad litem must be included in the record, the holding does not infringe on the trial court’s discretion to decide termination matters contrary to the recommendation of the guardian ad litem. The chancellor and the Court of Appeals properly found that J.R.D., Jr. had not abandoned his child without contact for one year. The chancellor also correctly found that the petitioners had not proved that J.R.D., Jr. was mentally, morally, or otherwise unfit to raise the child. Therefore, the judgment of the Court of Appeals and the judgment of the Franklin County Chancery Court are affirmed.
¶ 21. AFFIRMED.
PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR.