IRVING, J.,
for the Court.
¶ 1. J.L.T. and E.W.T., who are opposing parties and not related to each other, sought primary physical custody of J.N.T.[1] After a hearing on the matter, the chancellor awarded custody of the child to E.W.T. Aggrieved by the chancellor’s decision, J.L.T. raises the following issues on appeal: (1) the chancellor’s decision should be reversed because the court failed to properly consider the Albright factors in determining which party should be awarded custody of the child, and (2) the guardian ad litem failed to fully represent the interests of the minor child.
¶ 2. Finding no reversible error, we affirm the chancellor’s decision.
FACTS
¶ 3. E.W.T. engaged in an extramarital relationship with M.L.W., J.N.T.’s deceased mother. Under the belief that he was J.N.T.’s biological father, E.W.T. frequently visited and financially supported J.N.T.[2] After M.L.W.’s death, E.W.T. informed his wife about his affair with M.L.W. and of J.N.T.’s existence. Thereafter, J.L.T., M.L.W.’s best friend who helped care for J.N.T., petitioned the court for guardianship of J.N.T. E.W.T. consented, and J.L.T. was granted guardianship. E.W.T. continued to exercise regular visitation with the child.
¶ 4. In August 2002, E.W.T. filed a petition to dissolve the guardianship. He sought custody of J.N.T. In response, J.L.T. filed a petition requesting a paternity test and seeking custody of the child. A paternity test revealed that E.W.T. was not J.N.T.’s biological father.[3] Nevertheless, E.W.T. maintained his request for custody of the child.
1Í 5. A guardian ad litem was appointed by the chancellor to help protect J.N.T.’s interests. At a hearing to determine custody, the guardian ad litem testified that it was in J.N.T.’s best interest to be placed with E.W.T. The chancellor agreed and awarded E.W.T. primary physical custody of the child. Additional facts will be related during our discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Custody

¶ 6. J.L.T.’s first assignment of error challenges the chancellor’s award of custody to E.W.T. J.L.T. argues that the chancellor’s decision should be reversed because the court failed to properly consider the Albright factors in determining which party should be awarded custody of the child.
*633 ¶ 7. E.W.T., however, counters that this Court has made clear in several prior decisions that the Albyight factors need not be expressly addressed if the reviewing court can deduce from the record that the chancellor considered the factors when rendering the decision.
¶ 8. “[I]n custody cases, we are bound by the limits of our standard of review and may reverse only when the decision of the trial court was manifestly wrong or clearly erroneous, or an erroneous legal standard was employed.” Hensarling v. Hensarling, 824 So.2d 583, 587(¶ 8) (Miss.2002) (citing Wright v. Stanley, 700 So.2d 274, 280 (Miss.1997); Williams v. Williams, 656 So.2d 325, 330 (Miss.1995)). “Our standard of review in child custody cases is very narrow.” Hensarling, 824 So.2d at 587(¶ 8) “Like the chancellor, our polestar consideration must be the best interest of the child. However, it is not our role to substitute our judgment for the chancellor’s.” Id.
¶ 9. After thoroughly reviewing the evidence, the chancellor found that since J.N.T. knew E.W.T. as her father, it would be in J.N.T.’s best interest for her to be placed with E.W.T. Although the chancellor did not specifically refer to the factors enumerated in her judgment as the Al-bright factors, the record is clear that those factors considered by the chancellor in making the determination of custody were those expressed in Albright v. Albright, 437 So.2d 1003 (Miss.1983). The chancellor considered such factors as the parties’ willingness to provide for J.N.T.’s primary care, the moral fitness, health, and age of the parties, the stability of the home environment, and other factors relevant to the parent-child relationship. As a result, we find that the chancellor did not commit manifest error in awarding custody to E.W.T.

(2) Guardian Ad Litem

¶ 10. J.L.T. next argues that the guardian ad litem failed to fully represent the interests of the minor child. J.L.T. specifically contends, among other things, that the guardian ad litem failed to conduct a thorough investigation because she did not interview J.N.T.’s teachers and elderly grandmother or review J.N.T.’s school records.
¶ 11. We recognize that “[t]he proper function or role of a guardian ad litem [is] one who ‘investigates, makes recommendations to a court, or enters reports’ and is a ‘representative of the court appointed to assist in properly protecting the [child’s interest].’ ” S.N.C. v. J.R.D., Jr., 755 So.2d 1077, 1082(¶ 16) (Miss.2000) (quoting In re R.D., 658 So.2d 1378, 1383 (Miss.1995)).
¶ 12. Here, we find nothing in the record to suggest that the guardian ad litem did not fully represent the child’s interests. In addition to interviewing the child, the guardian ad litem visited the home of both parties and observed J.N.T.’s interaction with each of them. She also visited J.N.T.’s school and reviewed the child’s school records. Based upon her investigation, the guardian ad litem determined that it was in J.N.T.’s best interest for her to be placed with E.W.T. While the chancellor is not bound by the recommendation of a guardian ad litem, the chancellor, likewise, is not precluded from accepting the guardian ad litem’s recommendation.
¶ 13. In arriving at the decision to grant custody to E.W.T., the chancellor stated:
Given the unique circumstances of this case, the Court appointed a guardian ad litem to make a recommendation concerning what is in the best interest of [J.N.T.]. After investigating the matter, the guardian ad litem, Anna C. Ward, recommended that the Court “award *634 sole custody of the minor child, [J.N.T.], to [E.W.T.] and [G.J.TJ. She states the basis for her recommendation is that [E.WT.] and [G.J.T.] can provide a stable home life for [J.N.TJ. [E.W.TJ is the only father she has ever known. His wife has opened her home to [J.N.TJ and is willing to be a motherly figure to her. [J.N.TJ needs this stable environment to grow in and begin her life as a young adult. [J.N.TJ will be surrounded by people who love her wherever she is, but the best place for her is with the man she knows as her father.”
* * *
There is no question that [J.L.T.] makes a strong point in favor of maintaining custody of [J.N.TJ. However, this Court looks to the long term best interest of [J.N.TJ. [J.N.TJ believes [E.W.TJ to be her father. Her mother is deceased leaving no way to determine the biological father. [E.W.TJ maintains he wants to be [J.N.T.’s] father regardless. [J.L.T.] likewise wishes to be [J.N.T.’s] mother regardless. [E.W.TJ testifies that he filed to dissolve the guardianship after two years because he did not like what was going on in [J.L.TJ’s home. [J.L.T.] has four children by four different men. She has never been married and she lives with her fiancee. She cares for [J.N.T.’s] grandmother in her home and has taken in a crack baby who is her fiancee’s relative. Clearly [J.L.T.] is a caring, generous person. She does not attend church and it seems she does not really care for the institution of marriage.
[E.W.T.’s] children are grown and out of the house. He and his wife live alone and have available for Joy [sic] her own room. He provides health insurance and will provide financially for her. He and his wife attend church. They are older than [J.L.T.] but are in good health.
I can’t think of a more difficult decision than this one. [J.L.T.] and [E.W.TJ are not biologically related to [J.N.TJ and they are both willing to adopt and support her. But other factors come into play here. For one, [J.N.TJ believes [E.W.TJ is her biological father and he wants to continue his role as her father. Secondly, the guardian ad litem has accessed [sic] both living arrangements and insist that [J.N.T.’s] best interest is served by awarding the primary custody of [J.N.TJ to [E.W.TJ.
After reviewing the evidence and the unique circumstances, I accept the recommendation of the guardian ad litem and award primary custody of [J.N.TJ to [E.W.TJ. Because of the unique circumstances and to protect [J.N.T.’s] rights of inheritance, the Court requires [E.W.TJ to legally adopt [J.N.TJ.
¶ 14. We cannot find fault with the learned chancellor’s decision; therefore, we affirm her judgment awarding custody of J.N.T. to E.W.T. and ordering her adoption by him.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. The child's name has been changed to protect her privacy.

. E.W.T.'s name was placed on the child's birth certificate.

.Although the record does not contain an order for a paternity blood test, there is no doubt that such a test was done, as all parties including the chancellor acknowledged the existence of the test, and the results of the test are included in the record.