CARLTON, J., for the Court.
¶ 1. On December 28, 2006, the Coahoma County Chancery Court entered an order terminating the parental rights of R.L., the natural father, with respect to his son. R.L. appeals that decision. We find no error and affirm.
FACTS
¶ 2. G.F. and R.L. were married. They had one son during their marriage, who was born November 21, 2002. The couple separated soon after he was born, and they divorced on January 22, 2004. Their child custody agreement provided that G.F. would have primary physical custody of the child. R.L. had visitation with the child on the first, third, and fifth weekends of each month, as well as various holidays and an extended period during the summer. R.L. was also required to pay $400 per month for support of the child.
¶ 3. R.L. last visited with the child in December 2003. He claimed that he drove down from his home in Memphis to Coaho-ma County in January and February of 2004, but was unable to visit with his son. He also claimed that he contacted G.F. in December 2004 to see his son, but she would not allow him visitation because she did not feel that R.L. could provide a stable environment for their son to visit. R.L. made no other efforts to see or to contact his son. He also failed to make any child support payments until after the complaint to terminate parental rights was filed.
¶ 4. G.F. filed her complaint seeking to terminate R.L.’s parental rights on June 5, 2006, claiming that he had failed to contact his son for nearly two years. A guardian ad litem was appointed on November 15, 2006. The chancellor heard arguments at a hearing conducted on December 1, 2006, and subsequently ordered that R.L.’s parental rights to his son be terminated. R.L. now appeals, claiming that the chancellor misapplied the applicable statute and that there was not enough evidence to support the chancellor’s findings. R.L. further claims that the performance of the guardian ad litem appointed to assist in the proceedings was inadequate.
DISCUSSION
¶ 5. “The standard of review on appeal of parental rights termination by abandonment matters is limited.” S.N.C. v. J.R.D., 755 So.2d 1077, 1080(¶ 7) (Miss.2000). We examine the chancellor’s findings under the manifest error/substantial credible evidence test. Id. (quoting Vance v. Lincoln County Dep’t of Pub. Welfare, 582 So.2d 414, 417 (Miss.1991)). We do not consider how we would decide the case ourselves. Instead, we must consider whether credible proof was presented from which a rational trier of fact could have found abandonment by clear and convincing evidence. Id. (quoting Ethredge v. Yawn, 605 So.2d *324 761, 764 (Miss.1992)). We will examine the case de novo, however, when it is clear that the chancery court’s decision resulted from a misunderstanding of the controlling law or was based on a substantially erroneous view of the law. Id.
I. Whether the trial court incorrectly applied Mississippi Code Annotated § 93-15-103 (Rev.2004)
¶ 6. In her complaint to terminate R.L.’s parental rights, G.F. relied on Mississippi Code Annotated Section 93 — 15—103(3)(b) (Rev.2004), which allows parental rights to be terminated when “[a] parent has made no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year[.]” R.L.’s parental rights were terminated pursuant to this provision. R.L. argues that the chancery court incorrectly applied the statute and that the chancellor’s ruling was not supported by credible proof from which a rational trier of fact may have found grounds for termination.
¶ 7. R.L. claims that the chancery court failed to take into consideration G.F.’s refusal to allow him to visit with his son. He also claims that the chancery court should have considered other facts that weighed in his favor: (1) including that he maintained a life insurance policy for the benefit of the child, (2) that part of his child support arrearage had been paid, and (3) that a family member had attempted to have contact with the child. Further, he claims that the chancery court focused too much attention on the fact that he was behind on his child support payments.
¶ 8. R.L. admits that he never made any child support payments until after the action was brought to terminate his parental rights, at which time he made the first of three separate payments. He also asserts that part of his child support arrearage had been cleared as the result of an involuntary seizure of his tax refund. The Mississippi Supreme Court has acknowledged that “[flailure to pay child support without more is insufficient predicate for a finding of abandonment.” Carter v. Taylor, 611 So.2d 874, 877 (Miss.1993). It is clear from the chancery court’s bench ruling and its order terminating parental rights that the decision to terminate R.L.’s parental rights was predicated on more than R.L.’s failure to pay child support, though failure to support the child was material to the chancellor’s ruling.[1]
¶ 9. The chancellor read the applicable portion of section 93 — 15—103(3)(b) into the record when he made his ruling:
The factor that the Court has before it in consideration of this case is paragraph ... 3(b) wherein it states, ‘The parent has made no contact with a child under the age of three for six months or a child three years or older for a period of one year.’ And there are other considerations the Court can consider. But *325 paragraph (3) says ‘One or more of the following factors.’
In applying the statute to the facts of this case, the chancery court found that the evidence unquestionably proved that R.L. failed to have contact with his child for a period of one year. The chancellor found that R.L. actually failed to maintain contact for a period of approximately two years and ten months. The chancery court heard the testimony and considered the evidence presented by both parties. The chancery court also reviewed the report and recommendations provided by the guardian ad litem. After reviewing the facts in this case, the chancery court found that R.L. had “failed miserably” in his obligations as a parent since the divorce in January 2004 until the filing of the complaint for termination of parental rights on June 5, 2006.
¶ 10. R.L. also asserts that there was no credible proof presented from which a rational trier of fact could find by clear and convincing evidence that he had not had contact with his child in excess of one year. This argument is wholly without merit, as R.L. testified himself that he had not seen his child in more than two years. He claims that he sent clothes for the child, but the record shows that R.L.’s mother actually picked out the clothes and shipped them herself. Regardless, the clothes were sent nearly two years prior to the action to terminate parental rights being filed. He also claims that he called G.F. monthly in an effort to see his son, but she refused to allow the visits. Even if his claim is true, we find that R.L. never took any steps toward enforcing his rights under the custody and visitation agreement. Further, we find that the chancellor did not improperly apply Section 93-14-103 in rendering his judgment.
II. Whether the investigation and report of the guardian ad litem were adequate to protect the best interests of the child.
¶ 11. R.L. also finds error with the performance of the guardian ad litem appointed to assist in the case. He claims that she was not adequately informed as to her duties as a guardian ad litem and that her report was insufficient. He also points out that the guardian ad litem did not testify at trial. Mississippi Code Annotated Section 93-15-107 (Rev.2004) requires that a guardian ad litem be appointed to protect the interest of the child in a termination of parental rights case. The requirements of a guardian ad litem are that he be “competent, without interests adverse to the child, and ... adequately informed as to his duties.” S.N.C., 755 So.2d at 1082(¶ 16) (citing Copiah County Dep’t of Human Sens. v. Linda D., 658 So.2d 1378, 1383 (Miss.1995)). The role of the guardian ad litem is to act as a representative of the court and to assist the court in protecting the interests of an incompetent person by investigating and making recommendations to the court. Id. (citing Linda D., 658 So.2d at 1383). The guardian ad litem in this case met these requirements.
¶ 12. R.L. complains about the guardian ad litem’s performance. However, when the guardian ad litem offered to conduct supplemental interviews with R.L., he failed to participate. Therefore, it is difficult to find merit in his argument that the guardian ad litem failed to adequately perform her obligations when R.L. did not avail himself of the supplemental opportunities to meet with her.
¶ 13. Here, the sole considerations were whether R.L. had failed to maintain contact with his child for the requisite time period and whether his parental rights *326 should be terminated for his abandonment and failure to maintain a relationship with his child. In her report to the chancery court, the guardian ad litem found that R.L. was a stranger to this four-year-old child that R.L. had not shown any initiative to rehabilitate the relationship.
¶ 14. R.L. failed to take advantage of his opportunities to have supplemental meetings with the guardian ad litem, evidencing a lack of desire to initiate a relationship with his child of tender years. In this case there were no allegations that the child was not well cared for by the mother or that his health and welfare were lacking in any way. R.L.’s argument that the guardian ad litem did not adequately perform her obligations is without merit. R.L. has not shown this Court that the guardian ad litem was incompetent or inadequately informed, nor has he shown that she acted other than in the best interests of the child. Therefore, we find no error.
CONCLUSION
¶ 15. Because we find that credible proof was presented to the chancery court from which the chancellor was able to find that the father had made no contact with the minor child in excess of one year, we affirm the judgment of the chancery court terminating R.L.’s parental rights with respect to his son.
¶ 16. THE JUDGMENT OF THE COAHOMA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.

. R.L. represented at trial that he would pay off his current arrearage if his parental rights were not terminated. When further questioned on cross-examination, R.L. stated that he was “not going to quit paying for my son,” indicating that he intended to pay the arrear-age whether his rights were terminated or not. Regardless of what he intended to do, R.L.’s child support obligations are separate and distinct from this termination action. “We have consistently held that child support payments vest in the child as they accrue. Once they have become vested, just as they cannot be contracted away by the parents, they cannot be modified or forgiven by the courts. Each payment that becomes due and remains unpaid ‘becomes a judgment against the supporting parent.’ The only defense thereto is payment.” Houck v. Ousterhout, 861 So.2d 1000, 1002(¶ 9) (Miss.2003) (citations omitted). Moreover, parental rights are not a commodity to be bartered in a court of equity.