987 So.2d 975 (2008)
J.P. and C.P.
v.
S.V.B. and M.B.
No. 2007-CA-00165-SCT.
Supreme Court of Mississippi.
August 7, 2008.
*976 Jason D. Herring, tupelo, Chadwick Gordon Robison, attorneys for appellants.
Carter Dobbs, Jr., attorney for appellees.
Before DIAZ, P.J., CARLSON and RANDOLPH, JJ.
*977 CARLSON, Justice, for the Court.
¶ 1. Aggrieved by the chancellor's grant of custody of their thirteen-year-old daughter to her maternal grandparents, the parents appeal to us. Finding from the record that the chancellor did not abuse her discretion concerning the child-custody award and that the child-custody award is supported by substantial evidence in the record, we affirm the judgment of the Clay County Chancery Court.

FACTS AND PROCEEDINGS IN THE TRIAL COURT[1]
¶ 2. On March 14, 2006, Scott and Marie Barr filed a complaint for Child Custody and Other Relief in the Chancery Court of Clay County. In their Complaint, the Barrs sought custody of their granddaughter, Rebecca Palmer, a minor child born to Jackson Palmer and Catherine Palmer, who is the Barrs' daughter. At the time the complaint was filed, the Palmers were married and the parents of four children, and Catherine was pregnant with their fifth child. In their complaint, the Barrs alleged that Jackson committed a violent assault upon the Palmers' oldest child, Rebecca, and that the Palmers were mentally, morally, and otherwise wholly unfit to have the care, custody, and control of the minor children and of the unborn child of the Palmers. The Barrs further asserted that, as the maternal grandparents of the minor children, they were fit and proper persons to have the care, custody, and control of the Palmers' minor children and their unborn child.
¶ 3. On April 25, 2006, at the conclusion of a temporary custody hearing, the Barrs were awarded temporary custody of the Palmers' oldest minor child, Rebecca Palmer, subject to visitation by the Palmers. Additionally, attorney Thad Buck was appointed as guardian ad litem for the minor children.[2]
¶ 4. On August 10, 2006, Buck filed his Final Report of Guardian Ad Litem in which he submitted "it is the opinion of the Guardian Ad Litem that it is in the Best Interest of [Rebecca Palmer] to be placed back into the home of her parents. I further find that the prior altercation was an isolated incident and that in my opinion there does not exist any danger of this happening again. I find no reason for her not living with her parents. And I further find that there exists no reason for the removal of any of the other children from the home of the parents."
¶ 5. On August 17, 2006, a trial was held in the Chancery Court of Clay County, Chancellor Dorothy W. Colom presiding. At the conclusion of the trial, Chancellor Colom took this matter under advisement for subsequent entry of an opinion and judgment. On November 14, 2006, the chancellor entered her opinion finding, inter alia, that custody of Rebecca should be granted to the Barrs, subject to visitation by the Palmers. In her opinion, Chancellor Colom relied on Mississippi Code Annotated Section 93-5-24(9) and found the following facts:

*978 The Court finds from a preponderance of the credible evidence that one incident of family violence occurred on February 4, 2006, when Father struck Mother and slapped [Rebecca] more than once, causing her nose to bleed. The Court finds this incident caused serious bodily injury to [Rebecca]. Further, according to the testimony of LaKicha Montgomery, [Rebecca's] counselor at Community Counseling, the child believes Father presents a danger to her. In addition, the Court finds by a preponderance of the evidence that Father has engaged in a pattern of family violence against Mother that has been witnessed by [Rebecca] and this has had a negative effect on her. Neither Mother or Father presented any credible evidence to rebut the presumption of § 93-5-24(9) of the Mississippi Code of 1972, as amended. The only counseling or parenting classes either party has attended have been self-taught.
Therefore, the Court grants Grandparents custody of [Rebecca]. The Court is not following the recommendation of the Guardian ad litem as it is clear to the Court that the GAL did not consider § 93-5-24(9) of the Mississippi Code of 1972, as amended, when he made the recommendation.
In reference to the chancellor's finding that "[t]he only counseling or parenting classes either party has attended have been self-taught," the chancellor added a footnote stating: "At first Mother testified Father could not afford counseling, then later she changed her testimony and testified both would undergo counseling if the Court desired it. She also testified that she had bought some books and both she and Father now talk when they have problems. Father testified he did not need counseling or anger management classes." Concerning her finding that the Court was granting the grandparents custody of Rebecca, the chancellor added a footnote stating: "Mother is not a suitable person to be granted custody of [Rebecca] as Father resides in the household with her. In addition, the credible evidence is that Mother rationalizes Father's violent behavior."
¶ 6. On January 18, 2007, the chancery court entered its Order enforcing the grant of custody of Rebecca to the Barrs, but denying the Barrs custody of the Palmers' other minor children. From this final judgment, the Palmers have appealed to us, asserting five issues: (1) whether the chancellor erred in determining that the isolated incident of February 4, 2006, caused serious bodily injury to the minor child; (2) whether the chancellor erred in awarding a third party custody of a minor child over the natural parents, based upon an isolated incident that did not result in serious bodily injury; (3) whether the chancellor erred in applying the rebuttable-presumption provision of Mississippi Code Annotated Section 93-5-24(9) in this custody dispute between natural parents and a third party; (4) if the rebuttable presumption provisions of Section 93-5-24(9) are applicable in this case, whether the chancellor erred in granting custody to a third party instead of an innocent natural parent; and (5) whether the chancellor erred by not following, or properly acknowledging, the recommendation of the guardian ad litem in this matter.

DISCUSSION
¶ 7. For the sake of clarity in today's discussion, we will combine and restate the issues. Since all the issues in today's case involve matters related to a chancellor's award of child custody, our standard of review is limited. Reversal of a chancellor's judgment occurs only if a chancellor is "manifestly wrong" or "applied an erroneous legal standard." Floyd *979 v. Floyd, 949 So.2d 26, 28 (Miss.2007) (citing Powell v. Ayars, 792 So.2d 240, 243 (Miss.2001)). We will not reverse the chancellor's "factual findings where there is substantial evidence in the record supporting these findings of fact." Id. (citing Cooper v. Crabb, 587 So.2d 236, 239 (Miss. 1991)). It is the chancellor's role to ascertain "whether witnesses and evidence are credible and the weight to give each." Robison v. Lanford, 841 So.2d 1119, 1122 (Miss.2003) (citing Chamblee v. Chamblee, 637 So.2d 850, 860 (Miss.1994)). Furthermore, it is the responsibility of this Court, like the chancellor, to make the best interest of the child our "polestar" consideration. Hensarling v. Hensarling, 824 So.2d 583, 587 (Miss.2002).

I. WHETHER THE CHANCELLOR ERRED IN FINDING THAT JACKSON PALMER'S CONDUCT AMOUNTED TO FAMILY VIOLENCE AS CONTEMPLATED BY MISSISSIPPI CODE ANNOTATED SECTION 93-5-24(9) SO AS TO CREATE A REBUTTABLE PRESUMPTION THAT THE PALMERS SHOULD NOT HAVE CUSTODY OF THEIR OLDEST MINOR CHILD.
¶ 8. Mississippi Code Annotated Section 93-5-24(9)(a)(i) (Rev.2004) creates a rebuttable presumption that it is not in the best interest of a child to be placed in the custody of a parent with a history of perpetrating violence against a family member. Section 93-5-24(9)(a)(ii) states that this presumption may be rebutted by a preponderance of the evidence. More specifically, Mississippi Code Annotated Section 93-5-24(9) (Rev.2004) states in pertinent part:
(a)(i) In every proceeding where the custody of a child is in dispute, there shall be a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody or joint physical custody of a parent who has a history of perpetrating family violence. The court may find a history of perpetrating family violence if the court finds, by a preponderance of the evidence, one (1) incident of family violence that has resulted in serious bodily injury to, or a pattern of family violence against, the party making the allegation or a family household member of either party. The court shall make written findings to document how and why the presumption was or was not triggered.
(ii) This presumption may only be rebutted by a preponderance of the evidence.
See also Lawrence v. Lawrence, 956 So.2d 251, 262-63 (Miss.Ct.App.2006), Cockrell v. Watkins, 936 So.2d 970, 973 (Miss.Ct.App. 2006), C.W.L. v. R.A., 919 So.2d 267, 271 (Miss.Ct.App.2005).
¶ 9. In her findings of fact and conclusion of law, the chancellor found:
On February 4, 2006, Father upon returning home from working on the coast, had an argument with Mother and slapped her. The parties' three children were at home and he told them to go to their rooms. [Rebecca], the oldest child, looked out of her room and asked her father to stop hitting Mother. Father then came after [Rebecca] and slapped her in the face three or four times. Mother approached and told Father to stop hitting the child. [Rebecca] ran into the bathroom because her nose was bleeding. [Rebecca] decided to get her cell phone and call Grandparents. When she went to get the cell phone from her purse, Father took it. [Rebecca] grabbed Mother's cell phone and called Grandparents but their line was busy. She then called one of Mother's friends who called the police. [Rebecca] *980 went to the kitchen door to see if the police were coming. Father approached her and asked who she was waiting for and she told him her Grandparents. Father said if they come he would shoot them. He went up to the attic supposedly to get his gun. However, earlier in the year [Rebecca] had found the gun in the attic and hid it. When Father came down from the attic, he did not have the gun and the police arrived. Upon viewing the blood on [Rebecca], the police called the Department of Human Services ("DHS"). DHS worker, Deitra Dumas, arrived and took all the children to Grandparents.
¶ 10. While this is the only reported incident in which Jackson had physical contact with Rebecca, the chancellor found that "this was not the first time [Rebecca] had observed Father committing acts of violence against Mother." The Palmers argue that the chancellor erred when she determined that in this one incident of family violence on February 4, 2006, Jackson caused Rebecca to suffer "serious bodily injury." Essentially, the Palmers assert that the chancellor was manifestly wrong and clearly erroneous or at a minimum applied the incorrect legal standard when determining that Rebecca's injuries constituted "serious bodily injury."
¶ 11. However, it is clear from the chancellor's findings of fact that this was not an isolated incident. In fact, the credible evidence showed, and the chancellor determined, that Jackson had committed numerous acts of domestic violence against Catherine in the past. The chancellor determined that when Jackson struck Catherine and slapped Rebecca more than once, causing her nose to bleed, such incident was one which caused serious bodily injury. However, the chancellor went further and also found that Jackson had engaged in a pattern of family violence against Catherine that had been witnessed by Rebecca and that this had a negative effect on Rebecca. The chancellor thus determined that it was in the best interest of Rebecca to be in the custody of the Barrs, her maternal grandparents.
¶ 12. From the record before us, we cannot say that the chancellor was manifestly wrong, clearly erroneous, or applied an improper legal standard with regard to this issue. Powell, 792 So.2d at 243. Not only did the chancellor determine that Jackson's physical altercation with Rebecca on February 4, 2006, caused serious bodily injury, but the chancellor likewise found that Jackson had a history of perpetrating family violence. Both "an incident of family violence that has resulted in serious bodily injury" and "a pattern of family violence against ... a family member of either party[,]" are factors which create a rebuttable presumption that leaving Rebecca with the Palmers would be detrimental to Rebecca. Miss.Code Ann. § 93-5-24(9) (Rev.2004). Since the chancellor determined that the Palmers failed to rebut this presumption, the chancellor granted custody of Rebecca to the Barrs. From the record before us, in awarding custody of Rebecca to the Barrs as opposed to the Palmers, the chancellor was no doubt considering the best interest of the minor child. Hensarling, 824 So.2d at 587. We thus find this issue to be without merit.

II. WHETHER THE CHANCELLOR ERRED IN AWARDING A THIRD PARTY CUSTODY OF A MINOR CHILD OVER THE NATURAL PARENTS.
¶ 13. As discussed in Issue I, the chancellor determined that the February 4, 2006, incident caused serious bodily injury to Rebecca and that Jackson had engaged in a pattern of family violence against Catherine. The chancellor, as she was duty bound to do, made findings of fact *981 based on disputed evidence. Robison, 841 So.2d at 1122. Based on this evidence, the chancellor applied the rebuttable presumption of Mississippi Code Annotated Section 93-5-24(9)(a)(i) (Rev.2004). However, according to the Palmers, the chancellor failed to "make written findings to document how and why the presumption was or was not rebutted" pursuant to Mississippi Code Annotated Section 93-5-24(9)(a)(iv) (Rev.2004). Furthermore, the Palmers contend that Catherine, the innocent parent, should have been awarded custody of Rebecca over a third party, the Barrs.

A. Rebuttable Presumption
¶ 14. According to Mississippi Code Annotated Section 93-5-24(9)(a)(iii) (Rev.2004), the court must consider six enumerated factors when making the determination of whether the rebuttable presumption set forth in section 93-5-24(9)(a)(i) has been overcome. Section 93-5-24(9)(a) provides in pertinent part:
(iii) In determining whether the presumption set forth in subsection (9) has been overcome, the court shall consider all of the following factors:
1. Whether the perpetrator of family violence has demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child because of the other parent's absence, mental illness, substance abuse or such other circumstances which affect the best interest of the child or children;
2. Whether the perpetrator has successfully completed a batterer's treatment program;
3. Whether the perpetrator has successfully completed a program of alcohol or drug abuse counseling if the court determines that counseling is appropriate;
4. Whether the perpetrator has successfully completed a parenting class if the court determines the class to be appropriate;
5. If the perpetrator is on probation or parole, whether he or she is restrained by a protective order granted after a hearing, and whether he or she has complied with its terms and conditions; and
6. Whether the perpetrator of domestic violence has committed any further acts of domestic violence.
(iv) The court shall make written findings to document how and why the presumption was or was not rebutted.
¶ 15. In the chancellor's findings of fact, she determined that "[n]either Mother or Father presented any credible evidence to rebut the presumption of § 93-5-24(9) of the Mississippi Code of 1972, as amended. The only counseling or parenting classes either party has attended have been self-taught." The chancellor further explained her reasoning in a footnote which stated "[a]t first Mother testified Father could not afford counseling, then later she changed her testimony and testified both would undergo counseling if the Court desired it. She also testified that she had bought some books and both she and Father now talk when they have problems. Father testified he did not need counseling or anger management classes."
¶ 16. The applicable statute clearly required the chancellor to consider all of the above-listed factors in ascertaining whether the rebuttable presumption has been overcome, and the chancellor "shall make written findings to document how and why the presumption was or was not rebutted." That being said, a chancellor in these cases must specifically address each factor, failing which reversible error may quite likely result. However, from the record before us in today's case, we can *982 safely say that while the chancellor did not specifically refer in writing to all the factors enumerated in her judgment, she no doubt considered those factors in making the custody determination. The chancellor made sufficient, specific findings to support her conclusion that the Palmers did not provide evidence to rebut the presumption outlined in Section 93-5-24(9)(a)(iii) and (iv). Since these findings were supported by substantial evidence in the record, we are duty-bound not to reverse on this issue. Floyd, 949 So.2d at 28.

B. Innocent Natural Parent
¶ 17. Next, the Palmers assert that, even if the chancellor fully addressed the rebuttable presumption factors, the court erred in granting custody to a third party instead of to Catherine, an innocent natural parent. The chancellor reasoned that Catherine "is not a suitable person to be granted custody of [Rebecca] as Father resides in the household with her. In addition, the credible evidence is that Mother rationalizes Father's violent behavior." As such, the chancellor awarded the Barrs custody of Rebecca.
¶ 18. Once a chancellor has determined that the statutory rebuttable presumption has not been overcome, Mississippi Code Annotated Section 93-5-24(9)(b)(i) (Rev. 2004) provides:
If custody is awarded to a suitable third person, it shall not be until the natural grandparents of the child have been excluded and such person shall not allow access to a violent parent except as ordered by the court.
¶ 19. Thus, since we have already found that the chancellor did not err in determining that the statutory rebuttable presumption had not been overcome, we now find the chancellor likewise did not abuse her discretion in finding from the record before her that custody of Rebecca should be granted to the Barrs, Rebecca's maternal grandparents. Cooper, 587 So.2d at 239. This issue, therefore, is without merit.

III. WHETHER THE CHANCELLOR COMMITTED REVERSIBLE ERROR BY NOT FOLLOWING, OR PROPERLY ACKNOWLEDGING, THE RECOMMENDATION OF THE GUARDIAN AD LITEM.
¶ 20. To support their argument that the chancellor committed error by failing to follow, or properly acknowledge, the recommendation of the GAL, the Palmers cite S.N.C. v. J.R.D., Jr., 755 So.2d 1077, 1082 (Miss.2000). While S.N.C. involved the termination of a party's parental rights, citing this case was appropriate. In S.N.C., this Court held that "a chancellor shall include at least a summary review of the qualifications and recommendations of the guardian ad litem in the court's findings of fact and conclusions of law." Id. Additionally, "if the court rejects the recommendations of the guardian, the court's findings must include its reasons for rejecting the guardian's recommendations." Floyd, 949 So.2d at 29. "While a chancellor is in no way bound by a guardian's recommendations, a summary of these recommendations in addition to his reasons for not adopting the recommendations is required in the chancellor's findings of fact and conclusions of law." Id. (citing Hensarling, 824 So.2d at 587).
¶ 21. Mississippi Code Annotated Section 93-5-23 (Rev.2004) requires the chancellor to appoint a guardian ad litem in custody cases where allegations of abuse or neglect are asserted. After a hearing, the chancellor entered a Temporary Order wherein she appointed an attorney as guardian ad litem. The GAL conducted an investigation and made his Final Report of *983 Guardian Ad Litem in which he recommended to the chancellor that "it is in the Best Interest of [Rebecca Palmer] to be placed back into the home of her parents."[3] The GAL further found that "the prior altercation was an isolated incident." However, the chancellor did not follow the GAL's recommendation and instead awarded custody to Rebecca's grandparents, the Barrs. The chancellor stated in a footnote:
The Guardian ad litem recommended that [Rebecca] be returned to Father and Mother. His recommendation was based on the one incidence [sic] of February 4, 2006, which he found to be an isolated incident where the child did not suffer serious bodily injury.
The chancellor also stated "[t]he Court is not following the recommendation of the Guardian ad litem as it is clear to the Court that the GAL did not consider § 93-5-24(9) of the Mississippi Code of 1972, as amended, when he made the recommendation." The Palmers thus assert that the chancellor erred by not adequately identifying the reasons for not adopting the GAL's recommendations.
¶ 22. While the chancellor did not discuss the GAL's qualifications, the chancellor did state that she was not adopting the GAL's recommendations because the GAL considered only the isolated incident in which Jackson Palmer actually physically harmed Rebecca and not all of the times Rebecca witnessed abuse of Catherine Palmer. Further, the chancellor found that the guardian ad litem failed to recognize Mississippi Code Annotated Section 93-5-24(9) (Rev.2004). Therefore, we find that the chancellor did not err in failing to follow the GAL's recommendation concerning Rebecca's custody. Floyd, 949 So.2d at 28.

CONCLUSION
¶ 23. For the reasons stated, we affirm the judgment of the Clay County Chancery Court awarding custody of the minor child to her maternal grandparents.
¶ 24. AFFIRMED.
SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.
NOTES
[1] Based on the sensitive nature of this case, which involves allegations of physical violence inflicted upon a minor child and her mother, the identity of the minor child is being protected by identifying the minor child and all family members with the use of pseudonyms. See In Re Adoption of D.N.T., 843 So.2d 690, 693 n. 2 (Miss.2003).
[2] "The court may investigate, hear and make a determination in a custody action when a charge of abuse and/or neglect arises in the course of a custody action as provided in Section 43-21-151, and in such cases the court shall appoint a guardian ad litem for the child as provided under Section 43-21-121, who shall be an attorney." Miss.Code Ann. § 93-5-23 (Rev.2004) (emphasis added).
[3] The GAL previously had filed two separate reports. On May 30, 2006, the GAL filed his Report of Guardian Ad Litem which stated, under "Remarks":

1. I reserve the right to modify my recommendation after hearing all the testimony.
2. I find that there has been a substantial erosion of the parental relationship mainly between [Rebecca] and her father, [Jackson Palmer].
3. There exists in my opinion valid and substantial grounds for Temporary Custody of [Rebecca Palmer] to continue with the [Scott and Marie Barr].
4. There does not appear to be any compelling reasons to remove the other children from the custody of [Jackson and Catherine Palmer] at this time.
Additionally, the GAL stated under Recommendation:
1. I believe that it would be in the best interest of [Rebecca Palmer] to continue to live with her Grandparents, [Scott and Marie Barr], for the summer months. The other children to remain with their mother and father, [Jackson Palmer and Catherine Palmer].
On June 14, 2006, the GAL filed an Amended Report of Guardian Ad Litem containing exactly the same Remarks and Recommendations.