PIERCE, Justice,
concurring in part and dissenting in part.
¶42. Black’s Law Dictionary defines “appellate court” as “a court having jurisdiction of appeal and review of decisions of lower courts.... A reviewing court, and, except in special cases where original jurisdiction is conferred, not a ‘trial court’ or court of first instance.” Black’s Law Dictionary 64 (6th ed.1991). Appellate jurisdiction is defined as “[t]he power of a court to review and revise a lower court’s decision.” Black’s Law Dictionary 868 (8th ed.2004). In contrast, a chancellor is a “judge serving on a court of chancery .... or equity.” Id.
¶ 43. Section 159 of the Mississippi Constitution provides that chancery courts have full jurisdiction over cases involving minors. Miss. Const. 6 Art., § 159. The Legislature has further codified that jurisdiction. Jurisdiction over adoption is vested exclusively in chancery court. Miss. Code Ann. § 93-17-3(1) (Rev.2004). Chancery courts and family and county courts sitting as youth courts retain exclusive jurisdiction over hearings to terminate parental rights. Miss.Code Ann. § 93-15-105(1) (Rev.2004). Lastly, exclusive jurisdiction is defined as a “court’s power to adjudicate an action or class of actions to the exclusion of all other courts.” Black’s Law Dictionary 869 (8th ed.2004).
¶44. The majority has confused these terms, and now believes it is the job of this appellate court to take on the role of a chancellor. The majority makes a finding on abandonment and/or desertion in connection with the custody statute when the chancellor failed to make that original determination. It is the job of an appellate court to review the decision of the chancel *436 lor, not to make an original determination. It is the duty of this court to defer to the exclusive jurisdiction of the chancery court and only to review the decisions of the chancellor under the appropriate standard of review.
¶ 45. The chancellor’s findings of fact concerning the termination of parental rights are viewed under the manifest-error/substantial-credible-evidence standard of review. K.D.F. & J.C.F. v. J.L.H., 933 So.2d 971, 975 (Miss.2006) (quoting Vance v. Lincoln County Dep’t of Pub. Welfare, 582 So.2d 414, 417 (Miss.1991)). Therefore, we examine “whether credible proof exists to support the chancellor’s finding of fact by clear and convincing evidence.” Id. (citing S.N.C. v. J.R.D., 755 So.2d 1077, 1080 (Miss.2000)). That being said, “[i]t is not this Court’s role to substitute its judgment for the chancellor’s.” Id. (citing Hensarling v. Hensarling, 824 So.2d 583, 587 (Miss.2002)). Nonetheless, a chancellor must make detailed findings of fact and conclusions of law when dealing with a termination of parental rights or adoption hearing.
¶ 46. The Pendletons requested that the chancellor terminate Tony’s parental rights under Mississippi Code Section 93-15-103 and award them custody. Although the Pendletons were requesting custody of the minor child, the chancellor analyzed this case pursuant to Section 93-15-103. Section 93-15-103, dealing with termination of parental rights in connection with an adoption provides, in relevant part, that:
When a child had been removed from the home of its natural parents and cannot be returned to the home of his natural parents within a reasonable length of time because returning to the home would be damaging to the child or the parent is unable or unwilling to care for the child, relatives are not appropriate or are unavailable, and when adoption is in the best interests of the child, taking into account whether the adoption is needed to secure a stable placement for the child and the strength of the child’s bonds to his natural parents and the effect of future contacts between them, the grounds listed in subsections (2) and (3) of this section shall be considered as grounds for the termination of parental rights. The grounds may apply singly or in combination in any given ease.
Miss.Code Ann. § 93-15-103(1) (Rev.2004) (emphasis added). As noted in the trial court’s judgment, subsection (1) of the statute provides certain criteria which must be met prior to a consideration of the grounds for termination, one of which is, “the parent [must be] unable or unwilling to care for the child.” See Id. This statute governs abandonment and/or desertion in connection with adoption, and deals with the present conduct of the natural parents. Tony’s actions upon Deanna’s death show that he is willing to care for Zachary. He immediately expressed an interest in forging a relationship with his son, began regularly visiting Zachary, and paying child support. Therefore, I agree with the majority that the chancellor did not commit manifest error in refusing to terminate Tony’s parental rights.
¶ 47. However, abandonment and desertion also are looked at in a custody dispute and must be viewed in connection with Mississippi’s custody statute. The custody statute, Section 93-5-24, provides that:
(1) Custody shall be awarded as follows according to the best interests of the child.... (e) Upon a finding by the court that both parents of the child have abandoned or deserted such child or that both such parents are mentally, morally or otherwise unfit to rear and train the child the court may award physical and *437 legal custody to: (i) The person whose home the child has been living in a wholesome and stable environment; or (ii) Physical and legal custody to any other person deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child.
Miss.Code Ann. § 93-5-24(l)(e)(i)-(ii) (Rev.2004) (emphasis added).
¶48. While this Court previously has looked at abandonment and desertion through the lens of a termination and adoption proceeding, the analysis and definitions are still applicable in a custody dispute. Abandonment and desertion have been defined separately, with each involving different factors but reaching the same conclusion. Ainsworth v. Natural Father, 414 So.2d 417, 419 (Miss.1982). This Court noted that “abandonment has to do with the relinquishment of a right or claim, whereas desertion involves an avoidance of a duty or obligation.” Id. Abandonment is “any conduct on the part of the parent which evinces a settled purpose to forego all duties and relinquish all parental claims to the child.” Id.
¶ 49. The test for abandonment is “an objective one: whether under the totality of circumstances ... the natural parent has manifested [his] severance of all ties with the child.” J.R.D., Jr., 755 So.2d 1077 (quoting Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992)). In defining the term “desertion,” this court in Ainsworth noted the following definitions: “2. To forsake (a person, institution, cause, etc., having a moral or legal claims upon one). 3. To forsake one’s duty, one’s post or one’s party.” Ainsworth, 414 So.2d at 420.
¶ 50. In my view the chancellor did not make adequate findings on the record regarding whether the conduct of James Leverock constituted abandonment or desertion in connection with Section 93-5-24 of the Mississippi Code. The chancellor clearly focused on the father’s rights to raise his son, rather than on the child’s best interests, when he ruled:
While the short term security and interests of Zachary may be best served by leaving his custody in Plaintiffs, as cited in their post trial brief, the Supreme Court of Mississippi has “... never allowed termination of parental rights solely on grounds that others may be better parents.” V.M.S., a Minor, 938 So.2d 829 (Miss.2006). That same test must be used to measure Defendant’s legal rights to raise his son as opposed to third parties not related by blood. It is not the best interest of Zachary to be determined but rather the question presented is whether Defendant is fit and suitable to have custody of his son.
(Emphasis added.)
¶ 51. If Tony abandoned or deserted this child in connection with Mississippi Code Section 93-5-24, it follows that this nullifies any natural-parent presumption that would exist otherwise.[4] The record does indicate the chancellor looked at the petition for divorce and support agreement between the natural parents in order to make a determination on abandonment or desertion, but this is not enough. It is merely a document which James Leverock signed, it does not address his long absence from his son, Zachary. It is imperative that the court consider past behavior as well as the present, and the record does not include any indication that the chancellor addressed the nearly two-and-one-half- *438 year absence by James Leverock from the life of his son.
¶ 52. Therefore, it is my opinion that this case should be remanded to the trial court for a hearing on-the-record detailing and further addressing the nearly two-and-one-half-year period of absence by Tony from Zachary. If the court does find abandonment and/or desertion as set out by the custody statute found in Section 93-5-24, a best-interests analysis must be conducted on the record utilizing the Al-bright[5] factors, keeping in mind the polestar consideration is the best interests of the child. In re Custody of MAG., 859 So.2d 1001, 1003 (Miss.2003) (ruling that once unfitness is shown, the court must engage in a best-interests analysis utilizing the Albright factors); see K.D.F. v. J.L.H., 933 So.2d 971, 981 (Miss.2006).
CARLSON, P.J., JOINS THIS OPINION. WALLER, C.J., JOINS THIS OPINION IN PART.

. This Court has long held that the natural-parent presumption means that the parents "have a natural right to the nurture, care and custody of their children." Simpson v. Rast, 258 So.2d 233, 236 (Miss.1972).

. The Albright factors, used to determine child custody based on the best interests of the child, include: 1) age, health and sex of the child; 2) determination of the parent who had the continuity of care prior to the separation; 3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; 4) the employment of the parent and responsibilities of that employment; 5) physical and mental health and age of the parents; 6) emotional ties of parent and child; 7) moral fitness of parents; 8) the home, school and community record of the child; 9) the preference of the child at the age sufficient to express a preference by law; 10) stability of home environment and employment of each parent; and 11) other factors relevant to the parent-child relationship. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).