MAXWELL, J.,
for the Court: ■
¶ 1. While the rights of a parent are fundamental, they are not absolute. By statute, a parent may lose his parental rights if he fails to make any contact with his child for more than a year or causes his relationship with his child to substantially erode, at least in part, through his own serious neglect, prolonged and unreasonable absence, or unreasonable failure to visit or communicate.[1]
¶ 2. This is exactly, what, the chancellor found Thomas Barnes[2] had done, by clear and convincing evidence. Having initially refused to acknowledge his paternity and only visiting his daughter three to five times when she was an infant, Thomas stopped all contact, including support payments, when she was two and a half. Thus, when she was almost six — the time of the hearing to terminate his parental rights — what little relationship he had with her had completely eroded through his prolonged absence and failure to communicate.
¶ 3. Because credible proof exists to support the chancellor’s finding by clear and convincing evidence that there were not only grounds to terminate, but also termination was in the best interest,of the child, we affirm the chancellor’s judgment terminating all of Thomas’s parental rights and support obligations to his daughter.
Background
¶ 4. When Thomas was thirty-six, he had what the chancellor described as a “brief romantic relationship” with twenty-year-old Katie McGee. Katie became pregnant. *804 And in July 2006 a daughter, Madison, was born.
¶5. According to Katie, while she and Thomas were involved, Thomas suffered from mental illness and abused illegal drugs. He also physically abused her. When Katie was in the hospital prematurely giving birth, Thomas was also in the hospital seeking treatment. But when he was released, he did not visit Madison in the nursery, and he refused to sign her birth certifícate.
¶ 6. Over the first fifteen months of Madison’s life, Thomas saw Madison only a handful of times. His last visit was in October 2007. He did make some support payments, but these stopped in December 2008, when Madison was two and a half years old.
¶7. According to Thomas, he tried to call Katie so that he could visit Madison during 2009. Katie admitted Thomas had called her multiple times. But she testified that his calls were always either very late at night or early in the morning, usually with loud noise or music in the background. The chancellor found the purpose of these calls was to harass Katie, not to contact Madison.
¶ 8. In March 2010, when Madison was three and a half years old, Thomas filed a suit for paternity, custody, and visitation. His complaint was dismissed for failure to state a prima facie case. Thomas refiled in January 2011. Katie answered and filed a counterclaim to terminate Thomas’s parental rights.[3]
¶ 9. The chancellor first heard the paternity claim, issuing an order of filiation in November 2011. The following May, the chancellor held a hearing om Katie’s termination claim. The appointed guardian ad litem (GAL) recommended termination.[4] And the chancellor found there was “overwhelming evidence” óf grounds to terminate. The chancellor issued a final judgment terminating "all of Thomas’s parental rights with', regard to Madison, as well as any support obligations to Madison! Thomas timely appealed.
Discussion
¶ 10; This court is aware of the gravity of the outcome of this case. Thomas has lost his fundamental right to be a parent. See In re A.M.A., 986 So.2d 999, 1009 (¶ 22) (Miss.Ct.App.2007). Fundamental as it is, a parent’s right is not absolute and must be weighed against a child’s right to grow up With the opportunity to become well adjusted. Id. at 1009-10 (¶¶ 22-23) (citing Vance v. Lincoln Cnty. Dep’t of Pub. Welfare, 582 So.2d 414, 417 (Miss.1991)). But the United States Supreme Court has found the right to be a parent so “commanding” that only a clear and convincing showing of grounds to terminate will constitutionally suffice. M.L.B. v. S.L.J., 519 U.S. 102, 118, 117 S.Ct. 556, 136 L.Ed.2d 473 (1996) (citations omitted); see Miss.Code Ann. § 93-15-109 (Rev.2004) (permitting termination of parental rights if the “judge is satisfied by clear and convincing proof that the parent or parents are within the grounds requiring termination of parental. rights”); M.L.B., 519 U.S. at 121, 117 S.Ct. 555 (finding section 93-15-109’s evidentiary *805 standard complies with constitutional requirements).
¶ 11. Here, the chancellor was satisfied by clear and convincing- evidence that Thomas’s parental rights should be terminated based on two statutory grounds: (1) Thomas had made no contact with Madison for a period of more than one year prior to his March 2010 paternity petition. Miss.Code Ann. § 93-l5-103(3)(b) (Rev. 2004). And (2) there had beén a “substantial erosion of the relationship between [Thomas and Madison], which was caused at least in part 'by [Thomas’s] serious neglect,” “prolonged and unreasonable absence,” and “unreasonable failure to visit or communicate.” Miss.Code'Ann. § 93-15-103(3)(f).
¶12. On appeal, “it is pot [the appellate court’s] ,role to substitute its judgment for the chancellor’s.” W.A.S. v. A.L.G., 949 So.2d 31, 34 (¶7) (Miss.2007) (quoting K.D.F. v. 933 So.2d 971, 975 (¶ 14) (Miss.2006)). Instead, “we look for whether credible proof exists to support the chancellor’s finding of fact by clear and convincing evidence, keeping in mind the best interest of the child is the paramount consideration.” In re K.D.G. II, 68 So.3d 748, 751 (¶ 12) (Miss.Ct.App.2011) (internal quotation marks and citations omitted).
¶ 13. While only one statutory ground is needed to justify termination, W.A.S., 949 So.2d at 35 (¶11), we find there was credible proof to support the chancellor’s findings that both grounds had been proven by clear and convincing evidence.
I. No Contact for Over a Year
¶14. Because Madison was already more than three years old when Thomas filed his paternity suit, to prove grounds to terminate under sections 93-15-103(3)(b) and 93-15-109, Katie had to show by clear and convincing evidence that Thomas had not contacted Madison for more than a year. The year-plus of no contact is based on the time of the termination hearing — May 2012. K.D.G. II, 68 So.3d at 751 (¶ 16) (citing B.S.G. v. 958 So.2d 259, 270 (¶ 32) (Miss.Ct.App.2007)). By that time, it had been almost five years since Thomas had seen Madison, and more than four years since he had provided any financial support. It is undisputed that Thomas has not seen Madison since October 2007 and has not made a child-support payment since December 2008.
¶ 15. On appeal, Thomas asserts his “payments of child support and telephone calls to [Katie] must be considered as evidence which refutes the statutory one[-]year mandate of lack of contact required to terminate parental rights.” Thomas asserts the one year of no contact had to be calculated from March 2010, the date he filed his first paternity petition. And he points to his testimony that, in 2009, he tried to pay child support by direct depositing money into Katie’s bank account, only to find the account closed, and tried to contact Madison by calling Katie multiple times.
¶ 16. Even were we to ignore that 2009 is well outside of May 2012 — the date of the termination hearing and the date by which the one year is measured — we cannot ignore the chancellor’s factual finding that Thomas’s testimony about the attempted child support and the phone calls was not credible. In fact, the chancellor described Thomas’s claim that Katie made it impossible for him to pay child support as “almost inconceivable.” In 2009, Katie only earned $425 cleaning a bank after hours, while going to school and raising Madison. The chancellor found it was “just so improbable” that Katie would refuse child support. The chancellor also *806 found Katie’s recounting of the telephone calls to be more credible than Thomas’s. The chancellor could find no other reason to call a mother with a young infant during the hours of three to four in the morning than to disrupt her sleep and harass her. Had he really wanted to contact Madison, Thomas would have called at a time when-mother and child were likely to be awake and available. ■
 ¶ 17. “The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts.” Johnson v. Gray, 859 So.2d 1006, 1014 (¶ 36) (Miss.2003) (quoting Chamblee v. Chamblee, 637 So.2d 850, 860 (Miss.1994)). And we find no manifest error in the chancellor’s reasonable interpretation that: (1) Thomas had not tried to make- any child-support payments after December 2008, and (2) Thomas’s 2009 phone calls did not put a dent in — let alone defeat — the other clear and convincing proof that Thomas had failed to make contact with Madison after December 2008.
¶ 18. Thus, we find the chancellor had the discretion "to terminate Thomas’s parental rights based on this ground.
II. Substantial Erosion of the Father-Child Relationship
¶ 19. Again, the parental-rights-termination statute only requires one ground for termination to be shown by clear and convincing evidence. K.D.G. II, 68 So.3d at 751 (¶ 16). Here, we have two. And just like the first ground, we find Katie met her burden under sections 93-15-103(8)(b) and 93-15-109 to show by clear and convincing proof that there had been a substantial erosion of the relationship between Thomas and Madison, which was caused at least in part by Thomas’s serious neglect, prolonged and unreasonable absence,-and unreasonable failure to visit or communicate.
¶ 20. Thomas does not contest that he has. been long absent from Madison’s life, has not visited or communicated with her since she was fifteen months old,, and has not financially, supported her since she was two and a half. Instead, he likens his situation to the. father in In re M.L.W., 755 So.2d 558, 563 (¶¶ 21-23) (Miss.Ct.App.2000). But we fail to see the, similarity.
¶ 21. In M.L.W., this court agreed with the chancellor that the mother and stepfather had failed to prove by clear and convincing evidence that the father had caused the relationship with his, ¡daughter to substantially erode. Id. at (¶ 23). While the father was “hardly an ideal parent” and “did not spend enough time with the minor child nor did he exert enough effort attempting to spend time with the child[,] ... the record [was] also clear that [the mother] would not have let [the father] visit with the child had he made more attempts.” Id. at (¶¶ 22-23) (emphasis added). Because the father had made “feeble attempts to contact his daughter, provide for her, -and give her the gifts he bought for her,” we affirmed the chancellor’s judgment, which refused to terminate the father’s parental rights. Id. at (¶ 22).
- ¶ 22. But here, in contrast to the feeble attempts in M.L.W., we have no evidence of any attempt by Thomas to contact Madison, provide for her, or give her gifts since December 2008. The chancellor specifically noted there had been “no cards, no letters, no gifts,” with the exception of one letter Thomas allegedly wrote to Madison, which Katie testified she never received. Further, we have no “clear record” that any such attempts by Thomas would have been futile. While Thomas asserts in his brief that Katie’“admittedly refused to allow [him] to visit with [Madison],” he does not point to where in the record this assertion is supported.
*807 ¶23. Instead, the record supports the chancellor’s finding of a “complete breakdown” of Madison’s relationship with her father, caused by her father. See Vance, 582 So.2d at 418 (holding that, because there was an “erosion of a bad relationship to one that is practically non-existent,” the chancellor did not err in finding grounds to terminate).
III. Best interest of the Child
¶ 24. Satisfied by the existence, of clear and convincing proof of two grounds to terminate, the chancellor then considered whether termination was in Madison’s best interest. See W.A.S., 949 So.2d at 35 (¶ 10) (citation omitted) (applying two-prong inquiry in termination: (1) whether there is clear and convincing proof of grounds to terminate, and (2) if so, whether termination is in the best interest of the child). Because Madison had never known Thomas as her father, the chancellor found forcing her to have a relationship with him after an almost five-year absence would have “harmfully disrupted” her otherwise “happy, stable” life. Because the record— in particular the GAL’s recommendation that termination was in Madison’s best interest — supports this decision, we affirm the judgment terminating all 'of Thomas’s parental rights and support obligations to Madison.
¶ 25. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE,’ROBERTS, CARLTON AND FAIR, JJ„ CONCUR. JAMES, J., NOT PARTICIPATING.

. Miss,Code Ann, § 93-15-103(3) (Rev,2004) (listing eight statutory grounds for involuntary termination of parental rights); Miss. Code Ann, § 93-15-109 (Rev.2004) (granting chancery, youth, or county court judge permissive authority to terminate all parental rights if judge finds clear and convincing . proof of statutory grounds" to terminate exists).

. The case is scaled as confidential. Thus, to maintain confidentiality, the style of the case and the, names of both parties and the minor child have been changed, in accordance with . Mississippi. Rule of Appellate Procedure 48A(a).-.

. See Miss.Code Ann. § 93-15-105(1) (Supp. 2012) ("Any person, agency or institution may file for termination of parental rights in the chancery court or the family or county court sitting as the youth court of the county in which a defendant or the child resides, or in the county where an agency or institution holding custody of the child is located.”).

. In all actions to terminate parental rights, a GAL must be appointed to protect the interest of the child. Miss.Code Ann. § 93-15-107(1) (Rev.2004).