782 So.2d 737 (2001)
M.J.S.H.S.
v.
YALOBUSHA COUNTY DEPARTMENT OF HUMAN SERVICES, by Martha McDANIEL, Social Services Regional Director, S.L.H., M.A.H. and L.H.H., minors, by and through their next friend, Martha McDaniel.
No. 2000-CA-00770-SCT.
Supreme Court of Mississippi.
April 5, 2001.
*738 Minnie P. Howard, Clarksdale, for Appellant.
Kay C. Frost, Jackson, for Appellees.
Before BANKS, P.J., SMITH and WALLER, JJ.
WALLER, Justice, for the Court:
¶ 1. Appellant M.J.S.H.S. appeals from the judgment of the Chancery Court of the Second Judicial District of Yalobusha County, terminating her parental rights to her minor children, S.L.H., M.A.H., and L.H.H. Also terminated in the same proceeding, but uncontested, were the parental rights of the father, M.L.H.[1] Because the guardian ad litem appointed to represent the minor children failed to personally interview the children and offer an independent recommendation to the Chancellor, we vacate and remand.

FACTS AND PROCEEDINGS BELOW
¶ 2. The mother and father were married and residing in Yalobusha County in 1994, with their three children and the mother's child from a previous relationship. It is undisputed that the couple had *739 a volatile relationship, often resulting in violent outbursts by the father. These violent outbursts were fueled by the father's all too frequent consumption of alcohol and regularly led to physical violence towards the mother and the children.
¶ 3. After one such episode in June of 1994, the mother claims she contacted the Yalobusha Department of Human Services and requested that it take physical custody of her four children until she could provide a safer home for them. D.H.S. contradicts this account of how they obtained custody of the children. Judy McClain, a licensed social worker and employee of D.H.S., testified that there had been an ongoing investigation concerning some bruising of the couple's eldest child (by a boyfriend of the mother's) as well as numerous reports of domestic violence between the father and mother. As a result of this investigation, McClain stated that a decision was made by D.H.S. to take custody of the four children. It is undisputed that since the children were removed from the parental home, D.H.S. has maintained continual custody of all of the children, excluding child X, since June of 1994. At some point following the children's placement with the Yalobusha County D.H.S., the mother and father separated and obtained a divorce.
¶ 4. Three years after the children were placed in custody, the daughter, ten years old at the time, began experiencing severe emotional problems, resulting in the loss of clumps of hair and prolonged crying spells. Eventually the daughter confided in her foster mother that her father had in the past sexually abused her. Based on these revelations, an appointment was made for the daughter to see Paul Davey.[2]
¶ 5. At the conclusion of his therapy with the daughter, Davey recommended that she receive continuing therapy with an appropriate individual in her community. When asked if he had any concerns about the daughter being returned to either of her natural parents, Davey testified, "[I] felt her best interests could be satisfied by her remaining in foster care, out of the homes of either her mother or her father...."
¶ 6. As a result of the daughter's disclosures to Davey, the father was found guilty of the crime of fondling and is currently serving a seven-year sentence in the custody of the Mississippi Department of Corrections. The mother was not charged with any crime in connection the sexual abuse perpetrated by the father.
¶ 7. Brad Peeples, the children's guardian ad litem, testified that it was his belief that the mother's parental rights should be terminated. Peeples based this decision on records and reports from D.H.S., and conversations with both Judy McClain and Paul Davey. While admitting he had not spoken with the children or their mother, Peeples testified that the sole reason he had not interviewed the children was that both McClain and Davey opined that it would not be in the best interests of the children to be interrogated about these past experiences.
¶ 8. After a period of some six years, D.H.S. filed a complaint in chancery court seeking to terminate the parental rights of the mother and father with regards to their three minor children. Trial took place over the course of two days, the first date being January 21, 2000, and the second and final date, March 9, 2000. Upon conclusion of the second day of trial, the *740 Chancellor rendered an oral opinion terminating the parental rights of both the mother and the father pursuant to Miss. Code Ann. § 93-15-103 (1994).

DISCUSSION
¶ 9. The mother argues that Brad Peeples, the guardian ad litem, failed to fulfill his legal obligation toward the minor children, in that he did not conduct an independent, impartial investigation into this matter. The mother focuses her argument on the fact that Peeples testified he never even met with the children to discuss their desire to be reunited with their mother. By failing to contact the minor children, the mother argues that Peeples failed in his "affirmative duty to zealously represent the [children's] best interest." See In re D.K.L., 652 So.2d 184, 188 (Miss. 1995).
¶ 10. D.H.S. argues, and the record reveals, that the sole reason Peeples did not personally interview the children was the he was informed by the daughter's therapist, Paul Davey, and the children's social worker, Judy McClain, that such contact would not be in the children's best interest. In addition to his conversations with Davey and McClain, Peeples testified that he relied on records kept by D.H.S., reports and summaries prepared by D.H.S. workers, and other D.H.S. workers familiar with the case.
¶ 11. The mother argues that as it has been over two years since Davey last interviewed her daughter, it was impossible for him to know the child's current state of mind and whether it would be injurious for Peeples to speak with her. Also, as Davey has never seen nor interviewed the other two children, the mother claims that Davey was in no position to recommend that Peeples refrain from interviewing these children. As a result, the mother argues that Peeples cannot justify his failure to communicate with the children based upon Davey's recommendation.
¶ 12. With regard to the social worker's (McClain's) recommendation that it was not in the children's best interest to communicate with Peeples, the mother argues that as no proof was offered that McClain possessed the requisite psychological training and certification, Peeples was not justified in relying on her assessment. Further, as McClain's agency was attempting to terminate the mother's parental rights, she could hardly be considered a fair and impartial advocate for the children. The mother asserts that the trial court erred in accepting Peeples' reliance on McClain's recommendation not to visit the children.
¶ 13. The mother also claims that Peeples failed in his duties to vigorously represent her children's best interest in that he never contacted her or the children's step-father. The mother also argues that had Peeples contacted her current therapist, he would have gained considerable insight into whether or not she had acquired the necessary parenting skills to care for all four of her children. Finally, the mother argues that Peeples should have, at the very least, interviewed the children's current physical custodians and inquired into their current living arrangements, in order to make an adequate recommendation to the court.
¶ 14. Miss.Code Ann. § 93-15-107 (1994) requires that a guardian ad litem shall be appointed to protect the interest of the child in the termination of parental rights. Our case law states that guardians ad litem do not have an option to perform or not perform, rather they have an affirmative duty to zealously represent the child's best interest. See In re D.K.L., 652 So.2d at 188. In In re D.K.L., a neglected child case, the guardian ad litem simply deferred to the therapist's recommendations *741 and stated that he had no opinion as to what was in the child's best interest. Because the guardian ad litem failed to fully represent the child's best interest, we reversed and remanded the chancery court's decision to remove restrictions placed upon the child's stepfather. See id. at 191-92.
¶ 15. We have held with regard to the minimum requirements for the appointment of a guardian ad litem, one must be competent, without interests adverse to the child, and he must be adequately informed as to his duties. See S.N.C. v. J.R.D., 755 So.2d 1077, 1082 (Miss.2000). The proper function or role of a guardian ad litem is one who "investigates, makes recommendations to a court, or enters reports" and is "a representative of the court appointed to assist it in properly protecting the interests of an incompetent person." Id. (citations omitted).
¶ 16. The mother in the case before us appears to be attacking the guardian ad litem's investigatory skills. This assertion does appear to have considerable merit. It is hard for this Court to imagine that a guardian ad litem, without ever visiting the children he/she represents, can be fully informed as to their best interests. Although there may be unusual situations where this is not the case, such does not present itself here. At the very least, Peeples should have visited the children to ascertain their current status and evaluate how they were progressing developmentally.
¶ 17. In a termination of parental rights proceeding, the sole reason for the appointment a guardian ad litem is to ensure that the best interest of a minor child is fully sought out and protected. See Miss.Code Ann. § 93-15-107 (1994). While we are careful to allow the guardian ad litem as much flexibility as possible, we believe that in this case Peeples should have been prepared to testify as to the present health, education, estate and general welfare of the children. This of necessity would require that Peeples have interviewed the minor children, their current custodians, and prospective adoptive parents, if any. Additional record reviews, such as school grades and current medical and or psychological records, in addition to the records already reviewed by Peeples, would be helpful. The interview with the daughter can be done within the restraints previously established by Davey, though his voiced restrictions are without the benefit of a current exam. Since this is a termination of parental rights case, some contact with the natural mother may be appropriate.
¶ 18. Because the children's guardian ad litem failed to "zealously" inquire into and protect their best interest, we must vacate and remand, with directions to the guardian ad litem that he interview each child, and make an independent finding as to what is in the children's best interest in this matter. Once the guardian ad litem meets this requirement, the Chancellor is ordered to conduct a hearing for the limited purpose of considering the report and recommendation of the guardian ad litem and to weigh this with the other proof already in evidence. Afterwards, the Chancellor is to make a final decision regarding whether the parental rights should be terminated.

CONCLUSION
¶ 19. Because the guardian ad litem failed in his duty to protect the best interest of these children, we vacate the judgment of the Yalobusha County Chancery Court and remand to that court with directions that the guardian ad litem interview each child and prepare an independent recommendation. We further direct the Chancellor to conduct an on-the-record *742 hearing for the limited purpose of reviewing the guardian ad litem's new recommendation, to weigh this with the evidence already presented, and to enter a new judgment supported by appropriate findings of fact and conclusions of law.
¶ 20. VACATED AND REMANDED.
PITTMAN, C.J., BANKS and McRAE, P.JJ., SMITH, MILLS, COBB, DIAZ and EASLEY, JJ., concur.
NOTES
[1] Because it is confusing to refer to the parties by initials, we will refer to the parties as the mother, the father, with their three children being referred to as the oldest son, the daughter and the youngest son. The mother's son from a previous relationship will be referred to as "child X", and the mother's current husband will be referred to as the stepfather.
[2] Davey was accepted by the court as an expert in the fields of psychometry, psychotherapy, and domestic violence. Davey testified that he had been accepted as an expert witness 187 times in Youth, Chancery, Circuit, and U.S. District Courts. Davey also testified that he had treated more than 2,500 sexually and/or physically abused children.