824 So.2d 617 (2002)
D.J.L.
v.
BOLIVAR COUNTY DEPARTMENT OF HUMAN SERVICES, by Martha McDaniel, Social Services Regional Director, and C.L. and D.L., Minors, by and through their Next Friend, Martha McDaniel.
No. 2000-CA-02100-SCT.
Supreme Court of Mississippi.
August 22, 2002.
*618 Olufemi Gbolahan Salu, Ruby White, attorneys for appellant.
Office of the Attorney General, by Marion Earl Scales, attorney for appellees.
Before SMITH, P.J., WALLER and CARLSON, JJ.
SMITH, Presiding Justice, for the Court.
¶ 1. D.J.L. (the mother) appeals from the judgment of the County Court of the First Judicial District of Bolivar County, Mississippi, terminating her parental rights with regard to her minor children, C.L. (daughter) and D.L. (son).
¶ 2. Although the trial court did not have the benefit of our opinion in M.J.S.H.S. v. Yalobusha County Dep't of Human Servs. ex rel. McDaniel, 782 So.2d 737, 741 (Miss. 2001), we vacate and remand with instructions that the guardian ad litem submit a written report or testify during a limited hearing before the judge giving recommendations after conducting a thorough independent investigation covering what is in the best interest of the child and that the county court should conduct an on-the-record hearing for the limited purpose of reviewing the guardian ad litem's new recommendations, to weigh these with the evidence already presented, and to enter a new judgment supported by appropriate findings of fact and conclusions of law.

*619 FACTS

¶ 3. The daughter involved in this case was born on May 24, 1993, and the son was born on August 29, 1994. On or about April 4, 1995, the West Bolivar County Department of Human Services ("DHS") received a report involving the minor son, when he was approximately eight months old. Following the report, social workers at DHS investigated allegations that the son was abused and neglected. After the investigation, the daughter and son were removed from the custody of their mother and placed in the custody of DHS. DHS found that allegations of abuse and neglect were justified and began proceedings to remove the children from the custody of their mother. Specifically, DHS found that unexplained marks on the infant child were probably the result of the child being burned by a cigarette when he was in the care either of his father or his mother.
¶ 4. On a petition by DHS, the Youth Court Division of the County Court of the First Judicial District of Bolivar County entered an order on May 2, 1995, placing all four of mother's children (two of which are not subject to this appeal) in the custody of DHS. On June 20, 1995, a "review" hearing was held sustaining the May 2, 1995, order placing custody of the children with DHS. The order specifically stated that the mother was "to continue with Mental Health Counseling and her shots along with parenting classes. Further, the mother is to enter into and complete a service agreement with the Department of Human Services." Summons of the June 20th hearing was sent to the mother and father, and DHS was represented at the hearing by Albert B. Smith III the Bolivar County Prosecuting Attorney at the time.
¶ 5. The social workers with DHS have entered into five service agreements with the mother since 1995. Each service agreement is essentially the same, requiring that the mother:
1. Arrange visits with the children on a monthly basis; and to make telephone calls to the children at least twice monthly;
2. Attend and benefit from mental health appointments to include parenting classes;
3. Demonstrate responsible behavior to include stable housing and keeping bills current; and
4. Not utilizing corporal punishment on the children.
DHS contended that the mother had not satisfactorily completed all aspects of a case management plan to allow for the return of the children.
¶ 6. The mother was diagnosed with schizophrenia and has required medical treatment to control the disease. In the spring of 1996, she had an episode that required hospitalization at the Vicksburg regional mental health center. The mother has been living in the same apartment in Benoit, Mississippi, since her release from the Vicksburg hospital in 1996. The mother testified, however, that she unilaterally stopped attending counseling sessions at the Cleveland Mental Health Center, but she does go there routinely to receive her shots.
¶ 7. After five years of attempting to get the mother to fully comply with the requirements of their service agreements, on May 15, 2000, DHS filed a petition asking for the termination of parental rights of the mother and father of the children. On June 21, 2000, the County Court appointed a guardian ad litem to represent the children in the hearing on the petition. The petition came for a hearing on August 16, 2000. At the hearing, the mother, DHS social worker Linda Tribune, CASA worker Patty Hendricks, and Sister Helen Papan testified. Each witness was examined *620 by the guardian ad litem, as well as, the attorneys for DHS and the mother. The father did not attend the hearing.
¶ 8. The trial court found that the parental rights of the father of the children should be terminated. The court also found that, the statute governing the termination of parental rights, Miss.Code Ann. § 93-15-103 (Supp.2001), applied to several accusations in the petition. First, the trial court found that the allegations that the mother had engaged in several negligent and abusive incidents concerning the children had not been proven satisfactorily. Second, the court found that the allegation in the petition regarding the mother's failure to eliminate ongoing behavior identified by DHS as preventing the placement of the children with her was proven. Next, the court found that the mother had an ongoing diagnosable condition which makes it impossible to return the children to her care and custody. The court also found that there was a substantial erosion in the relationship between the mother and the children because they had not been in her custody for five years, and this was caused, in part, due to her actions. The court further found that termination of parental rights was justified because the children were in the care and custody of DHS for more than a year.
¶ 9. It is from this order that the mother appeals.

STANDARD OF REVIEW
¶ 10. In termination of parental rights cases, the standard of review is limited. S.N.C. v. J.R.D., 755 So.2d 1077, 1080 (Miss.2000). In these cases, "the chancellor's findings of fact are viewed under the manifest error/substantial credible evidence test." Vance v. Lincoln County Dep't of Pub. Welfare ex rel. Weathers, 582 So.2d 414, 417 (Miss.1991) (citing Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985); Veselits v. Cruthirds, 548 So.2d 1312, 1316 (Miss.1989)). This Court asks "not how we would have decided the case ab initio but whether there would be credible proof from which a rational trier of fact of fact may have found" as it did. Ethredge v. Yawn, 605 So.2d 761, 764 (Miss. 1992).

DISCUSSION
¶ 11. On appeal, this Court should always keep the best interest of the child paramount. In re D.K.L., 652 So.2d 184, 189 (Miss.1995). The mother assigns three issues as reversible error.

A.

WHETHER THE TRIAL COURT SHOULD HAVE DISMISSED THE PETITION TO TERMINATE PARENTAL RIGHTS BECAUSE OF DHS'S FAILURE TO GRANT HER AN ADJUDICATORY AND DISPOSITIONAL HEARING OR TO APPOINT A GUARDIAN AD LITEM TO REPRESENT THE CHILDREN WHEN THEY WERE REMOVED FROM HER CARE IN 1995.
¶ 12. The statute governing adjustment of status hearings in Youth Court states that "if the court finds from a preponderance of the evidence that the child is a neglected child or an abused child, the youth court shall enter an order adjudicating the child to be a neglected child or an abused child." Miss.Code Ann. § 43-21-561(3) (2000). Further, "[i]f the child has been adjudicated ... a neglected child or an abused child, the youth court shall immediately set a time and place for a disposition hearing which shall be separate, distinct and subsequent to the adjudicatory hearing." Id. § 43-21-601(1) (2000). "Unless the hearing is continued upon a showing of good cause or the person who *621 is a subject to the cause has admitted the allegations of the petition, an adjudicatory hearing shall be held within ninety (90) days after the filing of the petition to determine whether there is legally sufficient evidence to find that the child is a... neglected child or abused child...." Id. § 43-21-551(1) (2000). The procedure for a disposition hearing, includes:
(1) At the beginning of each disposition hearing, the judge shall inform the parties of the purpose of the hearing.
(2) All testimony shall be under oath unless waived by all parties and may be in narrative form. The court may consider any evidence which is material and relevant to the disposition of the cause, including hearsay and opinion evidence.
. . . .
(5) If the child has been adjudicated a neglected child or an abused child, prior to entering a disposition order, the youth court shall consider, among others, the following relevant factors:
(a) The child's physical and mental conditions;
(b) The child's need of assistance;
(c) The manner in which the parent, guardian or custodian participated in, tolerated or condoned the abuse, neglect or abandonment of the child;
(d) The ability of the a child's parent, guardian or custodian to provide proper supervision and care of a child; and
(e) Relevant testimony and recommendations, where available, from the foster parent of the child, the grandparents of the child, the guardian ad litem of the child, representatives of any private care agency which has cared for the child, the social worker assigned to the case, and any other relevant testimony pertaining to the case.
Miss.Code Ann. § 43-21-601 (2000). That sub-chapter of the code continues to state that:
The court to which appeals may be taken from final orders or decrees of the youth court shall be the supreme court of Mississippi. In any case wherein appeal is desired, written notice of intention to appeal shall be filed with the youth court clerk within ten (10) days after the rendition of the final order or decree to be appealed from, and costs in youth court and the filing fee in the supreme court shall be paid as is otherwise required by law for appeals to the supreme court.
Miss.Code Ann. § 43-21-651(1) (2000).
¶ 13. In a recent case where a juvenile defendant was brought up on charges of delinquency, this Court ruled that while a hearing held before the youth court was not styled an "adjudicatory hearing," it, nonetheless, met the requirements of Miss. Code Ann. § 43-21-551(1). D.D.B. v. Jackson County Youth Court, 816 So.2d 380 (Miss.2002). In that case this Court noted, "even though there was no direct statement on the record that this was an adjudicatory hearing and there was no document styled `continuation of hearing' or the like, we find the October 18, 1999, hearing was an adjudicatory hearing and the youth court judge was essentially continuing the adjudicatory hearing." Id. at 384.
¶ 14. In this case there was clearly a hearing held on June 20, 1995, within the ninety-day time period required by statute. The fact that it was called a review hearing does not change its adjudicatory nature. In fact, the mother was there, along with a representative of DHS and a CASA worker. The court order entered in that case refers to an inquiry more in depth than the one referred to in D.D.B. Therefore, while the language of § 43-21-551 *622 makes the adjudicatory hearing mandatory, there is no definition in the statute of an adjudicatory hearing. Therefore, the traditional requirements of an adjudicatory hearing were met in this case by the June 20, 1995 hearing.
¶ 15. Further, this issue is stale. If the mother wished to review the court order relieving her of custody of her children in 1995, she had ten days in which to file notice of appeal. She failed to do so, and, therefore, any attack on the 1995 order relieving her of custody of her children is not timely. This issue, therefore, is not be grounds for reversal.

B.

WHETHER THE GUARDIAN AD LITEM ADEQUATELY REPRESENTED THE MINOR CHILDREN IN THIS ACTION TO TERMINATE THE RELATIONSHIP BETWEEN THE CHILDREN AND THEIR PARENTS.
¶ 16. In actions for terminating parental rights "a guardian ad litem shall be appointed to protect the interest of the child in the termination of parental rights." Miss.Code Ann. § 93-15-107(1) (Supp. 2001). This proviso is mandatory. Recently, this Court stated "in a termination of parental rights proceeding, the sole reason for the appointment [of] a guardian ad litem is to ensure that the best interest of a minor child is fully sought out and protected." M.J.S.H.S., 782 So.2d at 741. In discussing the methods that a guardian ad litem should use in ensuring that they are protecting the best interest of the children, this Court stated that a guardian should testify to "the present health, education, estate and general welfare of the children.... This necessity would require that [the guardian] have interviewed the minor children, their current custodians, and prospective adoptive parents." Id. at 741. In M.J.S.H.S., this Court reversed because "the children's guardian ad litem failed to `zealously' inquire into and protect, their best interest." Id. The Court also stated that the guardian could not rely on the representations made to him by DHS and the CASA worker. Id. at 740. In another case where the guardian ad litem deferred to another person's recommendations as to what was in the child's best interest, this Court stated that the "failure of the guardian ad litem to fully represent this child's interest necessitates remanding so that someone with only D.K.L.'s best interest in mind can evaluate the family situation." In re D.K.L., 652 So.2d at 191.
¶ 17. In this case at bar the only evidence in the record of the guardian ad litem's activities is the transcript of the cross-examination he performed at the termination hearing. To this extent, we find no fault with the guardian's performance, and it appears that he properly and sufficiently represented the children. However, the recommendation or statement filed by the guardian on August 25, 2001 (almost a year after the termination order was entered) merely acknowledges that the guardian ad litem agrees with the recommendation of the Bolivar County CASA worker in that the son and daughter should remain in the custody of DHS with plans of attempting adoption. There is nothing in the record to indicate that the guardian ever talked privately with the children as required by M.J.S.H.S. There was no independent report presented to the trial court during the hearing or prior to the judge's decision. The guardian did not testify, as has occurred in some cases, but only limited himself to the cross-examination of other witnesses.
¶ 18. Therefore, this Court finds that the record as to the guardian ad litem's role in determining what is in the best interest of the children is lacking and this requires a limited remand of the case back *623 to the county court. However, as in M.J.S.H.S., the remand should only be so that the guardian ad litem can interview the children and make an independent evaluation as to what constitutes the best interests of the children. This Court emphatically proclaims to the bench and bar that in these type cases the guardian must submit a written report to the court during the hearing, or testify and thereby become available for cross-examination by the natural parent. The failure of the record to reflect that the guardian ad litem zealously pursued the defense of the children's best interest makes this case inconsistent with M.J.S.H.S.
¶ 19. Given our disposition, this Court does not address the mother's contention that the termination of her parental rights was not supported by clear and convincing evidence.

CONCLUSION
¶ 20. In this case, the mother's failure to appeal the 1995 custody ruling in a timely manner makes any attack on that order removing the children from her custody stale. She failed to give notice of appeal within the ten day window required by the statute and, therefore, that issue for appeal has no merit. However, the failure of the record to reflect the zealous independent protection of the children's best interest by the guardian ad litem requires vacating the county court's judgment and remanding the case back to the county court for a limited, single issue hearing. The guardian ad litem should interview each child and prepare independent recommendations for the trial court's consideration. Further, the county court should conduct an on-the-record hearing for the limited purpose of reviewing the guardian ad litem's new recommendations, to weigh these with the evidence already presented, and to enter a new judgment supported by appropriate findings of fact and conclusions of law. We do not express or imply any view as to how the trial court should rule on remand.
¶ 21. VACATED AND REMANDED.
PITTMAN, C.J., WALLER, COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.