# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00981-COA

KRISTEN E. MCGEE FARTHING                                        APPELLANT

v.

BRANDON W. MCGEE                                                  APPELLEE


DATE OF JUDGMENT:              05/10/2013
TRIAL JUDGE:                   HON. DAVID SHOEMAKE
COURT FROM WHICH APPEALED:     LAWRENCE COUNTY CHANCERY
                               COURT
ATTORNEY FOR APPELLANT:        ROBERT E. EVANS
ATTORNEY FOR APPELLEE:         JWON TERRELL NATHANIEL
NATURE OF THE CASE:            CIVIL - CUSTODY
TRIAL COURT DISPOSITION:       DENIED MOTION TO TERMINATE
                               PARENTAL RIGHTS
DISPOSITION:                   REVERSED AND REMANDED – 02/17/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., MAXWELL AND FAIR, JJ.

### MAXWELL, J., FOR THE COURT:

¶1.     Mississippi law mandates a guardian ad litem (GAL) be appointed to protect the

interest of children in termination-of-parental-rights cases.[1]  Once appointed, a GAL must

be adequately instructed on the proper performance of his or her duties, which in termination

cases requires making recommendations to the court.[2]  And when deciding if termination is

---

[1] Miss. Code Ann. § 93-15-107 (Rev. 2013); *E.M.C. v. S.V.M.*, 695 So. 2d 576, 581
(Miss. 1997).

[2] The Mississippi Supreme Court has "emphatically proclaim[ed] to the bench and
bar that . . . the guardian must submit a written report to the court during the hearing, or
testify and thereby become available for cross-examination by the natural parent."

proper, "chancellors, in their findings of fact, *must* include at least a summary of the GAL's recommendations."[3] Though chancellors are not bound by a GAL's recommendations, they *must* give their reasons when they reject them.[4]

¶2. The chancellor here appeared unaware of these obligations. He remarked that he did not "know what [he] can do" with the GAL's recommendations—which found adoption by the child's stepfather was in the child's best interest and favored termination of the father's parental rights. And his order denying the parental-termination request made no mention of the GAL's various findings and recommendations. Because of this confusion, and his belief a pending adoption petition was necessary before termination could be considered, we reverse and remand for the chancellor to consider the GAL's report in addressing this termination request.

**Facts and Procedural History**

¶3. Kristen Farthing and Brandon McGee were married on April 23, 2006. They had one child together, Ashton, who was born on September 7, 2006. The couple separated the day after Ashton was born, and later divorced.

¶4. Kristen was awarded custody of Ashton, and Brandon was granted visitation.

---

*McDonald v. McDonald*, 39 So. 3d 868, 883 (¶49) (Miss. 2010) (quoting *In D.J.L. v. Bolivar Cnty. Dep't of Human Servs. ex rel. McDaniel*, 824 So. 2d 617, 623 (¶18) (Miss. 2002)).

[3] *Borden v. Borden*, 2012-CT-01258-SCT, 2014 WL 5036036, at *4 (¶11) (Miss. Oct. 9, 2014) (emphasis added) (reversing domestic case based in part on chancellor not summarizing GAL's recommendations and failing to give reasons for rejecting GAL's recommendations).

[4] *Id.* (citing *S.N.C. v. J.R.D.*, 755 So. 2d 1077, 1082 (Miss. 2000)).

2

Brandon was also ordered to pay child support. After the divorce, Kristen and Ashton opted to stay in Mississippi.[5] But Brandon moved away to Tennessee and commuted to Texas to work on gas pipelines.

¶5. In December 2007, Brandon was severely burned in a work accident. His face was disfigured, he suffered fourth and fifth degree burns to his face and shoulders, and his entire nose had to be rebuilt. As a result, Brandon spent nine weeks in the hospital and required over thirty medical procedures. He also underwent several skin grafts and treatments at burn centers in Georgia and Tennessee. After the accident, he was forced to move in with his mother in Tennessee, who cared for him and drove him to his doctor's appointments.

¶6. In 2010, the parties entered an agreed judgment lowering Brandon's child support obligation and agreeing Brandon was $28,000 in arrears for nonpayment of child support.[6] And on September 29, 2011, Kristen petitioned the court to terminate Brandon's parental rights. The chancellor appointed a GAL to represent Ashton's interests.

¶7. During the February 14, 2013 termination hearing, Kristen downplayed any meaningful relationship between Brandon and Ashton, insisting the young boy did not know Brandon. She also claimed that Brandon's significant facial injuries had frightened the child

---

[5] Kristen and Ashton moved to Stringer, Mississippi, and lived with her new husband, Jim Parker. After Kristen and Parker divorced, she and Ashton moved in with her aunt. She finally settled in Monticello, Mississippi, in the fall of 2010 with her current husband, Ryan Farthing.

[6] While the chancellor found Brandon in contempt for not paying $5,000 in child support from the date of divorce until his injury, he did not hold Brandon in contempt for the unpaid $23,000 in support that had accrued after his injury.

3

during an Easter 2010 visit. Kristen's current husband, Ryan Farthing, testified that Ashton called him "dad." Ryan emphasized that he wanted to adopt the young boy.

¶8. Brandon also testified at the hearing. While he admitted he had not seen Ashton since 2010, he expressed his desire for a relationship with his son. Brandon cited his severe medical issues as his reason for not traveling to Mississippi to see his son.

¶9. After the hearing, the chancellor asked each side to send him a letter within twenty days, outlining their positions on how he should rule. At this point, the GAL spoke up and noted he "wasn't asked to provide anything." He inquired if the chancellor wanted his "opinion" too. The chancellor told him, "Yes, sir. You may submit something, but I don't know what I can do with it."

¶10. The GAL followed through and submitted his report and recommendations. In his view, Brandon did not satisfactorily explain his prolonged absence from Ashton's life. He neither showed "any expended efforts to locate Ashton," nor offered evidence on Kristen's part to prevent him from visiting his son. The GAL found Brandon was absent from Ashton's life for more than six months before he turned age three. And he found Brandon was absent for more than a year after the child reached age three. Both of the cited abandonments are grounds for termination under Mississippi Code Annotated section 93-15-103(3) (Rev. 2013).

¶11. The GAL's report also emphasized Brandon's failure to ever voluntarily support Ashton after immediately separating from Kristen the day after the Ashton's birth. The GAL felt any relationship between Brandon and Ashton had substantially eroded. The GAL

believed Ashton's best interests "will be advanced" if Ryan—who had "been present for practically all of Ashton's memorable life"—adopted him. The GAL did not find the termination request "unwarranted." And his "lack of opposition to the sought termination of parental rights [was] not contingent on any such adoption occurring." As the GAL put it, he would not "object" if the chancellor found Brandon's parental rights should be terminated.

¶12. By letter, the chancellor denied the termination of Brandon's parental rights. Kristen's counsel asked for additional detailed findings, and the chancellor entered an order giving his reasons for denying termination. The chancellor's decision was, at least in part, based on his view that a pending adoption petition was a required prerequisite before parental rights may be terminated. The chancellor also found that while the statutory abandonment period had been met, he believed Brandon's severe injuries caused his absence and inability to travel to Mississippi for visits. Neither the chancellor's letter nor his later order mentioned the GAL's findings or his report and recommendations.

¶13. Kristen disagreed with the chancellor's ruling and appealed.

**Discussion**

¶14. Our appellate review of a chancellor's decision in a termination-of-parental-rights case is limited. We view his or her findings of fact under "the manifest error/substantial credible evidence test." *Vance v. Lincoln Cnty. Dep't of Pub. Welfare*, 582 So. 2d 414, 417 (Miss. 1991) (citing *Bryant v. Cameron,* 473 So. 2d 174, 179 (Miss. 1985)). But questions of law are subject to de novo review. If a chancellor misapprehends controlling law or acts under a substantially erroneous view of the law, reversal is proper. *Ethredge v. Yawn*, 605

5

So. 2d 761, 764 (Miss. 1992).

¶15. Our concern is that the chancellor was unaware of the importance of the GAL's role in parental-rights-termination cases. Because there is no record evidence he considered the GAL's findings and recommendations, and because he wrongly believed an adoption petition must be pending to terminate parental rights, we find reversal is necessary.

##### I. Confusion Over the GAL's Role

¶16. The supreme court has discussed the chancellor's initial duties when appointing a GAL in a termination case. To assure the child's best interests, chancellors at a "minimum" must (1) select a competent person to serve as the GAL, (2) chose someone with no adverse interest to the minor, and (3) adequately instruct this person on the proper performance of his or her duties. *In re R.D.*, 658 So. 2d 1378, 1383 (Miss. 1995) (citing *Shainwald v. Shainwald*, 302 S.C. 453, 447 (S.C. Ct. App. 1990)). Furthermore, our supreme court has "emphatically proclaimed to the bench and bar that the guardian must submit a written report to the court during the hearing, or testify and thereby become available for cross-examination by the natural parent." *McDonald*, 39 So. 3d at 883 (¶49) (quoting *In re D.J.L.*, 824 So. 2d at 623). There is, however, flexibility in what a chancellor may require of a GAL. *See Jones v. Brown*, 2013-CA-01769-COA, 2015 WL 62587, *2-3 (¶¶9-14) (Miss. Ct. App. Jan. 6, 2015) (Judge Fair, writing for this court, thoroughly explained the chancellor's "discretion and flexibility in defining the guardian's duties on a case-by-case basis.").

¶17. Though here the chancellor entered an order appointing a GAL, as is required in

termination cases,[7] the record shows the chancellor had not asked him to "provide anything." And it was not until after the termination hearing that the GAL asked if the chancellor wanted his "opinion." The chancellor did tell the GAL he "may submit something." But the chancellor commented, "I don't know what I can do with it." So there was apparent confusion about the GAL's duties and the chancellor's own role in reviewing his findings.

¶18. The record does show the GAL filed a report of findings and recommendations, which was available to the chancellor. But it is not apparent from the record if the chancellor even reviewed it. We acknowledge there is certainly no requirement that a chancellor defer to a GAL's findings. *S.N.C.*, 755 So. 2d at 1082 (¶17). "Such a rule would intrude on the authority of the chancellor to make findings of fact and to apply the law to those facts." *Id.* However, there are certain court-created mandates about what a chancellor *must* do in cases where a GAL is required to submit findings and recommendations. In such cases, the chancellor "*shall* include at least a summary review of the qualifications and recommendations of the guardian ad litem in the court's findings of fact and conclusions of law." *Id*. at (¶18) (emphasis added). Here, he did not.

¶19. And when a "chancellor's ruling is contrary to the recommendation of a statutorily required guardian ad litem," the chancellor *must* give his or her "reasons for not adopting the

_____

[7] Mississippi statutory law requires that "[a] guardian ad litem shall be appointed to protect the interest of the child in the termination of parental rights." Miss. Code Ann. § 93-15-107(1). And our supreme court has made clear that the appointment of a guardian ad litem in parental-rights-termination cases is mandatory. *E.M.C.*, 695 So. 2d at 581 (citing *Luttrell v. Kneisly*, 427 So. 2d 1384, 1388 (Miss. 1983)).

guardian ad litem's recommendation . . . in the findings of fact and conclusions of law." *Id.*; *see also Borden*, 2014 WL 5036036, at \*4 (¶11). The GAL's findings and recommendations, the bulk of which favored terminating Brandon's parental rights, were not mentioned by the chancellor. While it was certainly the chancellor's call to deny terminating Brandon's parental rights, his uncertainty about the GAL's role and failure to address, much less mention, the recommendations requires reversal.

## II.     Section 93-15-103(1)'s Adoption Prerequisite

¶20.    We also note the chancellor believed a pending adoption petition was a prerequisite to considering grounds for termination. But while an apparent concern of the statute is when a parent's rights may be terminated for a child to be adopted,[8] there is no statutory mandate that an actual petition must be filed before termination is sought. *See* Miss. Code. Ann. § 93-15-103(1). Instead, our supreme court recently reemphasized the court must consider if "adoption is in the best interest of the child" as one of the three prerequisites to considering grounds for parental-rights termination. *Chism v. Bright*, 152 So. 3d 318, 323 (¶15) (Miss. 2014) (emphasis added). Our high court made no mention of the necessity for a pending adoption petition.

¶21.    On remand, the chancellor shall consider the GAL's report when addressing the prerequisites of section 93-15-103(1), as discussed and emphasized by the supreme court in

---

[8] *S.R.B.R. v. Harrison Cnty. Dep't of Human Servs.,* 798 So. 2d 437, 445 (¶32) (Miss. 2001) (Department of Human Services petitioned for termination of parental rights because close relatives, who had temporary custody of child, were interested in adopting child); *LePori v. Welch*, 93 So. 3d 66, 68 (¶6) (Miss. Ct. App. 2012).

*Chism*, 152 So. 3d at 323 (¶15).[9] If those prerequisites are deemed met, the chancellor shall address the abandonment-related grounds raised in Kristen's termination request.

**¶22. THE JUDGMENT OF THE LAWRENCE COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. JAMES, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION.**

**JAMES, J., SPECIALLY CONCURRING:**

¶23. I agree with the majority opinion as to the technical reasons for reversal. The majority opinion is based on the failure of the chancellor to address the report of the GAL and also on the fact that the chancellor made a statement that no adoption petition had been filed as a prerequisite to filing the petition to terminate parental rights. Despite the technical errors, the chancellor's reasons for denying the termination of parental rights were not in the best interest of the minor child.

¶24. This case has been remanded for the chancellor to consider the GAL's report, and in

---

[9] The Mississippi Supreme Court has recently emphasized the following prerequisites must be met before grounds for termination are considered:

> (1) the child has been removed from the home of its natural parents and cannot be returned to the home of his natural parents within a reasonable length of time or the parent is unable or unwilling to care for the child; (2) relatives are not appropriate or are unavailable; and (3) adoption is in the best interest of the child.

*Id.* (citing *In re Disolution of Marriage of Leverock & Hamby*, 23 So. 3d 424, 428 (¶15) (Miss. 2009)).

9

particular, to address the abandonment-related ground raised in the termination request. However, the chancellor did find that Kristen's lack of contact with the minor child was not willful.

¶25. There are some concerns in this case that raise a few red flags. Kristen states that Ryan wants to adopt her child, but no adoption petition has been filed. The filing of the adoption petition is not required as a prerequisite to the termination of parental rights, but the procedure is unusual. Also, it is within the chancellor's discretion to consider this issue in a case involving the termination of parental rights if the chancellor feels that the child will be left without a father and that it is in the child's best interest. Also, Brandon, the minor child's father, is presently paying $450 per month in child support, and the obligation to pay child support ceases when parental rights are terminated. *Beasnett v. Arledge,* 934 So. 2d 345, 348-49 (¶8) (Miss. Ct. App. 2006).

¶26. Kristen and Brandon were married April 23, 2006. The couple separated on September 7, 2007, the day after the minor child was born. The couple divorced in February 2007. Kristen received custody of the minor child, and Brandon was awarded visitation. Kristen married Ryan Farthing in October 2010. However, Farthing testified that, prior to their marriage, Kristen was married to Jim Parker. Kristen did not dispute this testimony. This marriage would make Farthing Kristen's third husband. Also, Kristen has moved several times to different places in Mississippi. Even though the chancellor committed technical errors, the chancellor was concerned with the best interests of the child. It appears that the chancellor was in doubt about the procedure and erred on the side of caution.

10

¶27. Although there was a GAL report, it does not appear from the record that the GAL talked to or visited with the minor child or his family. It appears that the GAL's report was based on reading the file and attending the hearing. The GAL should personally interview the child. *M.J.H.S. v. Yalobusha Cnty. Dep't of Human Servs. ex rel. McDaniel,* 782 So. 2d 737, 741 (¶17) (Miss. 2001); *see also D.J.L. v. Bolivar Cnty. Dep't of Human Servs. ex rel. McDaniel*, 824 So. 2d 617, 622 (¶¶16-17) (Miss. 2002). Since the record does show that the GAL can personally verify his report, it appears that the GAL should also be instructed by the court as to the proper performance of his duties.