# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00364-COA

**JASON WAYNE CHITWOOD**                                                         **APPELLANT**

**v.**

**STONE COUNTY DEPARTMENT OF CHILD**                         **APPELLEE**
**PROTECTION SERVICES**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/13/2018 |
| TRIAL JUDGE: | HON. JENNIFER T. SCHLOEGEL |
| COURT FROM WHICH APPEALED: | STONE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CAROLYN McALISTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MICHAEL D. WILSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 05/05/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND C. WILSON, JJ.**

**C. WILSON, J., FOR THE COURT:**

¶1.     The Stone County Chancery Court terminated Jason Wayne Chitwood's parental rights after finding that it was in his minor child's best interest.  Chitwood appeals the chancery court's ruling.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     T.C.[1] was born in 2014 to Cassie Nicole Ware and Chitwood.  In early 2017, the Mississippi Department of Child Protection Services (DCPS) received an anonymous call in

---

[1] We use initials for the minor child in order to protect his identity and preserve confidentiality of youth court proceedings.

which the caller indicated that Chitwood was cooking and using methamphetamine. At the time of the call, T.C. lived with his parents and paternal grandmother in a home in Perry County, Mississippi. The Perry County DCPS began an initial investigation, and Chitwood submitted to a drug screening on February 27, 2017. Chitwood tested positive for methamphetamine and amphetamine.[2]

¶3. Upon learning that Chitwood actually resided in Stone County, the case was transferred to the Stone County DCPS.[3] Following Chitwood's positive drug-test results, T.C. was removed from Ware and Chitwood's custody on March 3, 2017, and placed in a foster home by order of the Youth Court of Stone County, Mississippi.[4] After he was removed from his parents' custody, T.C. also tested positive for methamphetamine. On April 12, 2017, the youth court held an adjudication hearing, which Chitwood attended. The court found T.C. to be a neglected child. Chitwood did not contest the finding.

¶4. Chitwood entered into two service agreements with DCPS on April 10, 2017, and September 6, 2017.[5] The April 10, 2017 service agreement called for Chitwood to obtain and maintain adequate housing and employment, submit to random drug screenings, enter into

---

[2] Ware likewise tested positive for methamphetamine.

[3] All further references to "DCPS" are to the Stone County DCPS.

[4] The record indicates that DCPS initially attempted to place T.C. with his paternal grandmother, but because her husband was a convicted felon, T.C.'s grandmother was disqualified from providing foster care.

[5] In involuntary termination proceedings when the child is in DCPS custody, DCPS is required to develop a service plan for reunification of the parent and child. *See* Miss. Code Ann. § 93-15-115(b) (Supp. 2016).

an inpatient drug-treatment program, remain in contact with DCPS, maintain visitation with the minor child, and complete parenting classes. The September 6, 2017 service agreement was an amended version of the earlier agreement, changing the inpatient drug-treatment requirement to an outpatient drug-treatment requirement.

¶5. On November 8, 2017, the court held a permanency hearing in accordance with Mississippi Code Annotated section 93-15-115(c) (Supp. 2016). Prior to the hearing, Chitwood had submitted to five drug screenings in accordance with the service plans and tested positive for methamphetamine in four of the five screenings. Chitwood also failed to provide proof of either adequate employment or the completion of parenting classes and outpatient drug treatment. As a result, the youth court found that Chitwood failed to comply with his service plans and concluded that reunification was not in T.C.'s best interest.

¶6. On July 9, 2018, DCPS filed a petition in the Stone County Chancery Court to terminate Ware's and Chitwood's parental rights. On July 19, 2018, the chancery court appointed Alethea Shaw-Milton as T.C.'s guardian ad litem (GAL) "to protect [his] interests[.]" The court held a termination hearing on December 13, 2018. Tomekia Ramsey, the DCPS social worker assigned to the case, testified at the hearing that Chitwood substantially failed to comply with the conditions of both his service plans.

¶7. Shaw-Milton likewise testified that Chitwood failed to complete his service plans, noting his positive drug-screening results, failure to provide her with proof of employment, and failure meaningfully to interact with T.C. The GAL stated that she had been unable to locate or make contact with Chitwood, except for an interaction in court on October 9, 2018,

3

when the termination hearing was apparently initially set. During that interaction, the GAL provided Chitwood with her contact information, but Chitwood told her that he did not have a phone. Regardless, the GAL testified that Chitwood never contacted her. The GAL further attempted to make contact with Chitwood through social media, but Chitwood did not respond to those requests either. Because Chitwood failed to comply with the terms of his service plans, consistently failed to visit T.C., and failed to contact her, the GAL recommended that Chitwood's parental rights be terminated.

¶8.    The chancery court held that the "termination of [Ware's and Chitwood's] parental rights [was] appropriate because reunification between [Ware and Chitwood] and [T.C.] [was] not desirable towards obtaining a satisfactory permanency outcome[.]" In reaching this conclusion, the chancellor found the following grounds for termination of parental rights had been met by clear and convincing evidence: (1) Ware and Chitwood were suffering from habitual alcoholism or other drug addictions and had failed to substantially complete treatment as directed by their service plans; (2) Ware and Chitwood were unwilling to provide reasonably necessary food, clothing, shelter, or medical care for T.C.; (3) Ware and Chitwood failed to exercise reasonable visitation or communication with T.C.; (4) Ware's and Chitwood's neglectful conduct caused a substantial erosion in their relationship with T.C.; and (5) it was in T.C.'s best interest for Ware's and Chitwood's parental rights to be terminated so that T.C. may have a permanent and stable future and be eligible for adoption. *See* Miss. Code Ann. § 93-15-121 (Supp. 2017) (enumerating grounds for termination of parental rights). Accordingly, the chancery court terminated both Ware's and Chitwood's

4

parental rights.

¶9. Chitwood now appeals the termination of his parental rights, arguing that the GAL's failure to interview him constitutes reversible error and that the grounds for parental termination were not met by clear and convincing evidence.[6] Finding no error, we affirm.

DISCUSSION

¶10. Chitwood's assignments of error on appeal challenge the chancellor's evidentiary findings in support of her decision to terminate Chitwood's parental rights. We review a chancellor's findings of fact underlying a termination of parental rights "under the manifest error/substantial credible evidence test." *R.B. v. Winston Cty. Dep't of Child Prot. Servs.*, No. 2017-CA-01618-COA, 2019 WL 6873761, at *2 (¶9) (Miss. Ct. App. Dec. 17, 2019) (quoting *Blakeney v. McRee*, 188 So. 3d 1154, 1159 (¶13) (Miss. 2016)). Specifically, "[w]hen reviewing a termination of parental rights, we look for whether credible proof exists to support the chancellor's findings of fact by clear and convincing evidence." *J.F.G. v. Pearl River Cty. Dep't of Human Servs.*, No. 2016-CA-00099-COA, 2017 WL 2559787, at *3 (¶11) (Miss. Ct. App. June 13, 2017) (citing *In re K.D.G. II*, 68 So. 3d 748, 751 (¶12) (Miss. Ct. App. 2011)).

¶11. Chitwood first contends that the GAL did not fully represent T.C.'s best interest because she failed to interview Chitwood prior to the termination hearing held on December 13, 2018. We disagree.

¶12. The Mississippi Termination of Parental Rights Law "requires that a [GAL] shall be

---

[6] The court's termination of Ware's parental rights is not at issue in this appeal.

appointed to protect the interest of the child in the termination of parental rights." *M.J.S.H.S. v. Yalobusha Cty. Dep't of Human Servs.*, 782 So. 2d 737, 740 (¶14) (Miss. 2001) (emphasis omitted); *see* Miss. Code Ann. § 93-15-107(1)(d) (Supp. 2017). "Our case law states that guardians ad litem do not have an option to perform or not perform, rather they have an affirmative duty to zealously represent the child's best interest." *M.J.S.H.S.*, 782 So. 2d at 740 (¶14); *see also Barber v. Barber*, 288 So. 3d 325, 331 (¶26) (Miss. 2020) (stating that "guardians ad litem serve an important role as 'appointed investigators for, or advisors to, the court,' and, as authorized, 'the [GAL] should recommend a course of action to the court'" (quoting *S.G. v. D.C.*, 13 So. 3d 269, 282 (¶56) (Miss. 2009))).

¶13.    Here, the chancery court appointed Shaw-Milton as the GAL "to protect [T.C.'s] interests[.]" Relying on *In re D.K.L.*, 652 So. 2d 184 (Miss. 1995), Chitwood asserts that the GAL failed to meet this requirement because she neglected to interview Chitwood. In *D.K.L.*, the court-appointed GAL deferred to a recommendation of a therapist "and stated that he did not have any specific recommendation as to what was in the child's best interest." *Id*. at 188. There, the trial court had ordered the GAL "to interview the child and prepare a report for the [trial court] to consider," yet that report was not contained in the record on appeal. *Id*. In reversing the order, the supreme court stated that the "failure on the part of the [GAL] to fully represent this child's interest necessitates remanding so that someone with only D.K.L.'s best interest in mind can evaluate the family situation." *Id*. at 191.

¶14.    Unlike *D.K.L.*, we cannot say based on the record before us that the GAL failed to protect T.C.'s interests. After conducting an investigation, interviewing T.C., and visiting

6

with T.C. in his foster home, the GAL submitted her recommendation to the chancery court that Chitwood's parental rights should be terminated. The GAL repeatedly attempted to contact Chitwood before and after their one interaction in court on October 9, 2018. She gave Chitwood her contact information, and Chitwood failed to contact her. Even though the GAL was unable to interview Chitwood before she submitted her recommendation to the chancery court, her recommendation was nonetheless supported by "credible proof" sufficient, coupled with the other evidence in the record, to support the chancellor's finding that Chitwood's parental rights should be terminated. Given the GAL's repeated attempts to contact Chitwood and her other efforts on behalf of T.C., we cannot agree with Chitwood's assertion that Shaw-Milton failed in her duty as the GAL to represent T.C.'s best interest.

¶15.    In a similar vein, Chitwood also contends that the grounds for termination were not shown by clear and convincing evidence. Again, we disagree. "While the rights of a parent are fundamental, they are not absolute. By statute, a parent may lose his parental rights[.]" *Barnes v. McGee*, 178 So. 3d 801, 803 (¶1) (Miss. Ct. App. 2013). After finding that reunification was not in T.C.'s best interest under section 93-15-115(b),[7] the chancellor

---

[7] In their briefs on appeal, the parties both rely on superseded law. Prior to 2016, there were three statutory prerequisites that had to be met before a court could invoke any specific ground for termination:

> (1) the child has been removed from the home of its natural parents and cannot be returned to the home of his natural parents within a reasonable length of time or the parent is unable or unwilling to care for the child; (2) relatives are not appropriate or are unavailable; and (3) adoption is in the best interest of the child.

concluded that clear and convincing evidence supported the termination of Chitwood's parental rights based on the following statutory grounds: (1) Chitwood's "habitual alcoholism or other drug addiction" and failure "to successfully complete alcohol and/or drug treatment"; (2) his unwillingness to provide T.C. with "reasonably necessary food, clothing, shelter, or medical care"; (3) his failure "to exercise reasonable visitation or communication" with T.C.; and (4) his neglectful conduct, which caused "a substantial erosion of the relationship between" Chitwood and T.C. *See* Miss. Code Ann. § 93-15-121(c)-(f).

¶16.    Upon review, we find that clear and convincing evidence supported the chancellor's finding that more than one statutory ground for termination was substantiated in this case. Chitwood testified he had not completed any drug or alcohol treatment or rehabilitation programs, and he failed four (of five) drug screenings after T.C. was removed from Chitwood's custody. Chitwood substantially failed to meet his agreed service plans. Finally, the GAL testified that Chitwood failed to provide any proof of employment and that Chitwood had not been in contact with T.C. By contrast, the GAL testified that T.C. had bonded with his foster family and appeared to have no recollection of Chitwood or Ware. On this record, we find no error in the chancellor's finding that termination of Chitwood's

*Chism v. Bright*, 152 So. 3d 318, 322-23 (¶15) (Miss. 2014) (emphasis omitted) (quoting *In re Dissolution of Marriage of Leverock & Hamby*, 23 So. 3d 424, 428 (¶15) (Miss. 2009)) (discussing Mississippi Code Annotated section 93-15-103(1) (Rev. 2013)). But in 2016, the Legislature amended the Mississippi Termination of Parental Rights Law, deleting the prerequisites formerly provided in section 93-15-103(1) and setting forth the requirements for termination of parental rights in sections 93-15-115 to 93-15-121.

parental rights was in T.C.'s best interest.[8]

¶17.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**

---

[8] Chitwood filed a motion to strike DCPS's appellate brief for its failure to cite to the record.  However, because we find that the chancery court did not err in terminating Chitwood's parental rights, this motion is denied as moot.

9